EMPLOYERS INSURANCE
OF WAUSAU, Creditor–
Appellee,

v.

PLAID PANTRIES, INC.,
Debtor–Appellant.

No. 92–35058.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 1993.

Decided Nov. 1, 1993.

Leon Simson, James R. Herald (argued) and Richard H. Allan, Ball, Janik & Novack, Portland, OR, for debtor-appellant.

Jan D. Sokol and James T. Yand, Stafford Frey Cooper & Stewart, Portland, OR, for creditor-appellee.

Before: PREGERSON and KLEINFELD, Circuit Judges; LEGGE, District Judge.*

LEGGE, District Judge:

Debtor-appellant Plaid Pantries, Inc. ("Plaid") appeals from the district court's decision that creditor-appellee Employers Insurance of Wausau's ("Wausau") claim for unpaid workers' compensation insurance premiums was entitled to priority payment from Plaid's bankruptcy estate, 137 B.R. 405. We have jurisdiction under 28 U.S.C. § 158(d), and review the conclusions of the district and bankruptcy courts on this issue of law *de novo*. *In re Daniels–Head & Assoc.*, 819 F.2d 914, 918 (9th Cir.1987). There are no material facts in dispute.

## I.

This case presents a narrow but significant legal issue: Are unpaid workers' compensation premiums entitled to priority payment from a bankruptcy estate under 11 U.S.C. § 507(a)(4)? Section 507(a)(4) grants contributions to an "employee benefit plan" a fourth level of priority preference. Section 507 states that, "The following expenses and claims have priority in the following order: .... Fourth, allowed unsecured claims for contributions to an employee benefit plan...."

The term "employee benefit plan" is not defined by that statute.

## II.

The material facts are not in dispute. Wausau provided health, life and disability benefits to the employees of Plaid under a workers' compensation insurance plan. The premiums were paid by Plaid. Plaid filed for bankruptcy, and it did not pay $325,888 of pre-petition premiums owed to Wausau for that coverage. Wausau filed a priority claim for $59,029, which represents that portion of the $325,888 which was incurred within 180 days of the bankruptcy filing; see 11 U.S.C. § 507(a)(4)(A).

The bankruptcy court held that the workers' compensation premiums were not contributions to an "employee benefit plan", and consequently that Wausau was not entitled to priority payment. The district court reversed the bankruptcy court's conclusion. It held that as a matter of both public policy and statutory construction, the term "employee benefit plan" should have the same meaning under Section 507(a)(4) as it has under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* The district court determined that under ERISA, workers' compensation is an employee benefit plan, and that the premiums for that coverage are therefore entitled to priority payment under the Bankruptcy Code.

---

* Hon. Charles A. Legge, United States District Judge for the Northern District of California, sitting by designation.

## III.

■ We affirm the district court's judgment, but for the reasons stated below. We conclude that workers' compensation insurance is an "employee benefit plan" under Section 507(a)(4). We therefore need not reach the question of whether Congress intended to incorporate the definition of "employee benefit plan" in ERISA into the Bankruptcy Code.

Under the Bankruptcy Act of 1898, only actual "wages and commissions" had priority. Title 11, United States Code, Section 104(a) (repealed 1978). *United States v. Embassy Restaurant, Inc.*, 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959); *Joint Industry Board v. United States*, 391 U.S. 224, 88 S.Ct. 1491, 20 L.Ed.2d 546 (1968). The United States Supreme Court held in those cases that payments owed by an employer to a union workers' welfare trust fund were not entitled to priority as "wages" or "commissions" under Section 507(a)*(3)*. The Court rejected the argument that payments to a trust fund were a form of compensation made in exchange for lower wages.

In 1978, Section 507(a)*(4)* was added to the Bankruptcy Code in order to overrule those two cases and to provide a level of priority for "fringe benefits." *In re Saco Local Dev. Corp.*, 711 F.2d 441, 448 (1st Cir.1983). The statute expanded the priorities to include contributions to "employee benefit plans," forms of contribution not contemplated in the 1898 Act. It "recognize[d] the realities of labor contract negotiations, under which wage demands are often reduced if adequate fringe benefits are substituted." H.R.Rep. No. 595, 95th Cong., 2d Sess. 357 (1977) *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6313; S.Rep. No. 989, 95th Cong. 2d Sess. 69 (1978) *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5855.

■ The workers' compensation system is designed to provide benefits to victims of work related injuries. Those benefits are generally funded by insurance, the premiums for the insurance are paid by the employers, and the costs are passed on in the form of lower wages and higher prices. Those benefits are a form of compensation offered to workers in exchange for the labor that they perform. While the insurance is often statutorily—as opposed to contractually—mandated, the workers' compensation system is nonetheless a plan of compensation available to workers, and the employer's payment of insurance premiums fund it. Indeed, Plaid does not argue that statutorily required premiums are not "contributions" under Section 507(a)(4).

Plaid argues that in order to be entitled to a priority the plan benefits must be "wage substitutes;" that is, a substitute for the wages given priority under subsection (3). But we do not so interpret the intent of Congress. By amending Section 507 in 1978 and adding new subsection (4) Congress expanded, and not merely substituted, the priorities.

■ The purpose of Section 507(a)(4) is to protect workers' benefit plans. As stated by the First Circuit, allowing "the insurer to obtain its premiums through the priority would seem the surest way to provide the employees with the policy benefits to which they are entitled." *In re Saco Local Dev. Corp.*, 711 F.2d at 449.

We agree. We see no reason for concluding that Congress intended to deny priority to workers' compensation benefit plans while granting the same statutory priority to other plans providing benefits to employees. Nor can we conclude that Congress intended to distinguish between benefit plans that are contractually promised to employees and those that are statutorily required. The purpose of the priority, to protect the solvency of benefit plans, is present in both situations.

## IV.

The legislative history and the public policy behind Section 507(a)(4) both compel that the premiums owed to an insurer under a workers' compensation plan should be entitled to the same protection as other benefit plans provided to employees. Accordingly, the premiums for that coverage are accorded the same level of priority under by Section 507(a)(4).

The judgment of the district court is AFFIRMED.