## In re HLM CORPORATION, Debtor.

### Bankruptcy No. 4-92-3790.

United States Bankruptcy Court, D. Minnesota.

March 18, 1994.

Robert A. Judd, Wagner, Falconer & Judd, Ltd., Minneapolis, MN, for claimant.

James E. Ramette, Chanhassen, MN, Trustee.

### MEMORANDUM ORDER SUSTAINING THE TRUSTEE'S OBJECTION TO CLAIM NO. 20

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on the 23rd day of February, 1994, on the trustee's objection to Employers Insurance of Wausau's ("Wausau") proof of claim. Appearances were as follows: James Ramette as and for the trustee ("trustee"); and Robert Judd for Wausau.

### FACTS

1. On October 18, 1986, Wausau began providing workers' compensation insurance to HLM Corporation ("Debtor") pursuant to the Minnesota Assigned Risk Plan which provides insurance for those employers who are unable to obtain coverage through normal market channels.

2. Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code ("the Code") on May 21, 1992. On June 25, 1992 the case was converted to chapter 7 and the trustee was appointed.

3. On August 20, 1993, Wausau filed proof of claim (Claim No. 20) against the Debtor in the amount of $490,479 ("the claim"). According to Wausau, the claim represents pre-petition workers' compensation insurance premiums due for three relevant policy periods. Of the total amount, $149,704 was incurred within 180 days from the date the Debtor filed its bankruptcy peti-

tion. Wausau contends that this portion is a unsecured priority claim under § 507(a)(4) of the Code as it constitutes "contributions to an employee benefit plan."

4. On January 20, 1994, the trustee filed an objection to Wausau's claim on the grounds that the amount claimed is based upon an unaudited calculation, and that the claim, for whatever amount, is not properly classified as a § 507(a)(4) priority. The trustee argues that it is simply a general unsecured claim for unpaid insurance premiums.

5. At the hearing I allowed the parties further opportunity to brief the issue of whether Wausau is entitled to priority under § 507(a)(4).

## DISCUSSION

The narrow issue is whether Wausau is entitled to a priority claim under § 507(a)(4) for unpaid pre-petition workers' compensation insurance premiums earned within 180 days prior to the Debtor's bankruptcy petition. Section 507(a)(4) grants a fourth level priority status for "contributions to an employee benefit plan—arising from services rendered within 180 days before the date of the filing of the petition." 11 U.S.C. § 507(a)(4).[1] The terms "contribution" and "employee benefit plan" are not defined by the Code.

The starting point for resolving this issue is the language of the Code itself. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). The plain meaning of the Code shall be conclusive, except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafter." *Id.* at 242, 109 S.Ct. at 1031 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).

Furthermore, statutory priorities under section 507 of the Code are to be narrowly construed. *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 100 (2d Cir.1986); *In re Lull Corp.*, 162 B.R. 234, 239 (Bankr.D.Minn.1993). The rationale is that bankruptcies oftentimes involve many creditors seeking limited resources. As such, the Code envisions a priority system to distribute these limited resources. *McFarlin's*, 789 F.2d at 100. Therefore, section 507 is intended to be an exclusive list of priorities, and courts are not free to make their own rules regarding priorities. *Nathanson v. N.L.R.B.*, 344 U.S. 25, 29, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952); *United States v. Killoren*, 119 F.2d 364 (8th Cir. 1941); Collier on Bankruptcy § 507.02[1] (1993).

There are two reported decisions that address the issue of whether workers' compensation insurance premiums are entitled to priority under § 507(a)(4).[2] Both cases are

1. In its entirety, section 507(a)(4) provides:
    (4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—
       (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
       (B) for each such plan, to the extent of—
          (i) the number of employees covered by each such plan multiplied by $2,000; less
          (ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.
    11 U.S.C. § 507(a)(4).

2. Other courts have addressed whether some sort of insurance premiums are entitled to priority under § 507(a)(4). *See Allegheny Int'l, Inc. v. Metropolitan Life Ins. Co. (In re Allegheny Int'l,* *Inc.)*, 138 B.R. 171 (Bankr.W.D.Pa.1992), *aff'd*, 145 B.R. 820 (W.D.Pa.1992); *In re Saco Local Dev. Corp.*, 23 B.R. 644 (Bankr.D.Me.1982), *aff'd*, 711 F.2d 441 (1st Cir.1983); *Official Labor Creditors Comm. v. Jet Florida Syss., Inc. (In re Jet Syss. Florida, Inc.)*, 80 B.R. 544 (Bankr.S.D.Fla. 1987). While these cases have employed similar reasoning as the reported decisions involving workers' compensation insurance premiums, they are factually different. *Allegheny* involved insurance premiums for a self-insured plan furnishing life, disability, accidental death and dismemberment insurance benefits. *Allegheny*, 138 B.R. at 171–72. *Saco* concerned an insurer's claim for uncollected health, life and disability insurance premiums. *Saco*, 23 B.R. at 645. And *Jet Florida* involved a self-insurance program for reimbursement of employee's medical expenses. *Jet Florida*, 80 B.R. at 545. These cases deal with insurance of traditional fringe benefits voluntarily provided by employers in lieu of direct compensation.

factually similar to the present case in that the debtors failed to pay the pre-petition premiums to their workers' compensation insurance carriers, who in turn asserted priority status under § 507(a)(4) of the Code.

In *In re Arrow Carrier Corp.*, 154 B.R. 642 (Bankr.D.N.J.1993), the United States Bankruptcy Court for the District of New Jersey relied on the plain meaning of the Code and concluded that Congress had no intention of granting claims arising from unpaid workers' compensation premiums priority status since they were not specifically listed in section 507. *Id.* at 646.

The Ninth Circuit recently reached the opposite conclusion in *Employers Ins. of Wausau v. Plaid Pantries, Inc.*, 10 F.3d 605 (9th Cir.1993). The United States Bankruptcy Court for the District of Oregon denied the carrier's claim for priority, and was later reversed by the United States District Court for the District of Oregon. *See In re Plaid Pantries*, 137 B.R. 405 (D.Or.1991). The district court reasoned that workers' compensation insurance coverage is an "employee benefit plan" under the Code since ERISA's definition of "employee benefit plan" includes any plan maintained "through the purchase of insurance or otherwise [for] medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment." *Plaid Pantries*, 137 B.R. at 407 (citing 29 U.S.C. § 1002(1)).[3]

The Ninth Circuit affirmed the district court but on different grounds. Instead of relying on ERISA's definition, the Ninth Circuit held that the legislative history of § 507(a)(4) mandated priority status, as well as public policy.

■ This Court, being mindful of the principles of statutory construction and the generally narrow interpretation to be given priorities, concludes that unpaid pre-petition premiums for workers' compensation insurance are not entitled to fourth priority status under § 507(a)(4). This is so for numerous reasons.

*First*, the employer's payment of premiums to a workers' compensation insurance carrier is not a "contribution" to an employee benefit plan. A "contribution" is defined as "the act of contributing." Websters Third Int'l Dictionary 496 (1976). The verb "contribute" is defined as "to give or to grant in common with others (as to a common funds or to a common purpose): give (money or other aid) for a specified object." *Id.* This definition implies some sort of voluntary act. Typically, fringe benefits such as health, life and disability insurance are voluntarily given. Yet the payment of workers' compensation insurance premiums is not "voluntary." Rather, it is statutorily mandated.

*Second*, workers' compensation insurance is not a "plan." My understanding of a "plan" is that it is a means to implement an objective. In regards to § 507(a)(4), a "plan" is the manner in which an employer elects to compensate an employee in ways other than wages. Given this understanding, workers' compensation insurance is not a "plan", but is rather a statutorily mandated system to spread the risks of work-related injuries.[4] In Minnesota, an employer subject to the workers' compensation laws is liable for compensation to any employee for work-related injuries. *See* Minn.Stat. § 176.021, subd. 1 (1992). To assure that the employees are paid as quickly and efficiently as possible, the employer must either carry workers' compensation insurance, or demonstrate the ability to be self-insured. Minn.Stat. § 176.181, subd. 2 (1992). Failure of the employer to

---

**3.** Other cases have also held that Congress intended the term "employee benefit plan" to be the same as that in ERISA. *See, e.g., Allegheny*, 138 B.R. at 173; *Saco*, 23 B.R. at 646. *But see Florida Jet*, 80 B.R. at 547. I need not decide this issue. Even if the ERISA definition is read into the Code, which I doubt, there are other reasons why workers' compensation premiums are not entitled to priority under § 507(a)(4).

**4.** Generally, workers' compensation laws mandate that, unless an employer is specifically exempted, an employer is statutorily liable to compensate an employee for any work-related injury. This is generally a condition of exercising the privilege of transacting business in that state. In return, the employee accepting the benefits is deemed to have waived his or her common-law rights to recover from the employer whose negligence may have contributed to the injury. Spencer LeRoy et al., *Workers' Compensation in Bankruptcy: How do the Parties Fare?*, 24 Tort & Ins.L.J. 593 (1989).

insure is subject to certain penalties. Minn. Stat. § 176.181, subd. 3 (1992). Further, an injured employee of an uninsured employer will still receive benefits from a special compensation fund. *See* Minn.Stat. § 176.183, subd. 1 (1992). Thus, workers' compensation insurance is a manner in which an employer safeguards its statutory responsibilities. It is, in this respect, no different than motor vehicle liability insurance that many states require drivers to carry. This is clearly an insurance scheme. It is not a plan.

*Third,* the payment of workers' compensation insurance premiums does not "benefit" employees, as the term "employee benefit plan" logically suggests it must. To illustrate, employer sponsored health care insurance benefits the employee since it is the *employee* who is insured. Conversely, if the employer fails to provide health insurance, the employee is not insured (at least under an employer's plan). By contrast, workers' compensation insurance insures the *employer* from its liability to provide workers' compensation benefits. The fact that the employer is uninsured does not leave the employee without workers' compensation coverage, for the employee will still receive benefits from a special compensation fund. *See* Minn.Stat. § 176.183, subd. 1 (1992). The employee may also have additional remedies against the employer. *See* Minn.Stat. § 176.181, subd. 3 (1992); *Rezac v. Maier (In re Maier),* 38 B.R. 231, 234 (Bankr.D.Minn.1984). Accordingly, the payment of workers' compensation premiums to the insurer does not "benefit" the employee, but rather "benefits" the employer.

Along these lines, it is also evident that payment of a claim for workers' compensation insurance premiums under § 507(a)(4) would not benefit the employee. This priority distribution would benefit the insurance carrier. I doubt Congress intended that workers' compensation insurance carriers be paid on a priority basis when it enacted § 507(a)(4).

*Fourth,* section 507(a)(4) requires that the priority claim arise from a "service" rendered 180 days prior to the debtor's filing of the petition. Here, the claim for unpaid insurance premiums did not arise from a "service". Instead, it arises from the Debtor's failure to pay its insurer. This is no different than any other claim for a trade debt.

The plain meaning of the Code clearly illustrates that unpaid workers' compensation insurance premiums are not contributions to an employee benefit plan. Legislative history also supports this conclusion. Section 507(a)(4) was included in the Code to overrule *United States v. Embassy Restaurant,* 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1958) and *Joint Industry Board v. United States,* 391 U.S. 224, 88 S.Ct. 1491, 20 L.Ed.2d 546 (1968) which held that fringe benefits were not entitled to wage priority status. The theory behind § 507(a)(4) is that, in the realities of collective bargaining agreement negotiations, employees may give up certain claims for wages in exchange for fringe benefits. As a result, the fringe benefits earned 180 days before the filing of a bankruptcy petition should be entitled to priority in the same way and for the same reason that wages are entitled to priority. H.R.Rep. No. 595, 95th Cong., 1st Sess. 357 (1977) U.S.Code Cong. & Admin.News 1978, p. 5787. The legislative history makes it clear that § 507(a)(4) covers those types of benefits that typically are bargained for in the employer-employee setting whether as part of a collective bargaining arrangement or otherwise. Workers' compensation is not a bargained for benefit. Rather, it is a statutorily mandated system of imposing liability on an employer for an employee's injuries arising out of the workplace.

*Plaid Pantries* and other courts suggest that entitling insurance carriers to recover the unpaid premiums on a priority basis would ensure the payment of the benefits to the employees, and would prevent insurance carriers from canceling coverage for employees of financially troubled employers. *See Plaid Pantries,* 10 F.3d at 607; *Saco,* 711 F.2d at 449; *Saco,* 23 B.R. at 648. This rationale is misplaced for several reasons.

First, it makes no sense to compensate an entity for doing business with the financially distressed employer or debtor if the Code does not provide for such compensation. As *Arrow Carrier* articulated:

[T]he insurance companies argue that preferential payment of their premiums is necessary to ensure the financial viability of the workers' compensation insurance industry. This argument, however, could easily be made by any creditor. In today's complex business marketplace, every business might necessarily have to rely on the prompt payment of bills to ensure its own financial stability. Yet, the very fact that the Bankruptcy Code exists is testament to the fact that businesses will sometimes not be in the position to satisfy their debts. Accordingly, the price to be paid in the marketplace for this type of service offered should be a reflection of the realities of doing business in a sometimes unpredictable business environment—where bankruptcy is a definite possibility.

*Arrow Carrier*, 154 B.R. at 646. Section 507(a)(4) is not to assure the insurance industry that insurers will be paid their money. It is to ensure that the employees will receive the benefits they bargained for in the course of accepting employment with a debtor. The employees, in this case, will receive or have received their benefits regardless of whether the insurer is paid its premium.

Moreover, this Court is not in the position to protect insurers for the good of the insurance industry. To do so would be legislating. This Court's job is to interpret the Code, and give guidance on how to distribute the Debtor's assets according to the terms of the Code. If the Code does not provide for priority treatment to workers' compensation insurance carriers, this Court may not provide such treatment either.

### CONCLUSION

A claim for unpaid workers' compensation insurance premiums is not entitled to priority status under § 507(a)(4) of the Code.

ACCORDINGLY IT IS HEREBY ORDERED THAT:

1. The trustee's objection to Claim No. 20 filed by Wausau as a priority claim is SUSTAINED; and

2. Wausau's claim is not entitled to priority status under § 507(a)(4) of the Code.