**In re GERALD T. FENTON, INC., Debtor.**

**Bankruptcy No. 90–00181.**

United States Bankruptcy Court, District of Columbia.

March 1, 1995.

Bruce Robertson, for debtor.

### DECISION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

S. MARTIN TEEL, Jr., Bankruptcy Judge.

Under the court's consideration are cross motions for summary judgment on the priority claim of the Travelers Insurance Company ("Travelers"). The question faced by the court is whether a claim for unpaid premiums

for statutorily mandated workers' compensation insurance is entitled to fourth priority status under 11 U.S.C. § 507(a)(4) as "contributions to an employee benefit plan." For reasons set out below the court concludes that this claim is so entitled.

### DISCUSSION

Travelers filed a $24,721.24 unsecured priority claim in the debtor's bankruptcy case for unpaid workers' compensation premiums for the 180 days leading up to the filing of the debtor's petition in this court on March 9, 1990. The Travelers seeks priority status for this claim under § 507(a)(4), which provides:

> (a) The following expenses and claims have priority in the following order ...

> (4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—

>> (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

>> (B) for each such plan, to the extent of—

>>> (i) the number of employees covered by each such plan multiplied by $2,000; less

>>> (ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

In 1978, § 507(a)(4) was added to the Bankruptcy Code to address Congressional concerns regarding two prior Supreme Court decisions under the Bankruptcy Act of 1898. Under the § 104(a) of the Act, only actual "wages and commissions" were entitled to priority in bankruptcy. In *United States v. Embassy Restaurant, Inc.*[1] and *Joint Industry Board v. United States,*[2] the Supreme Court held that payments owed by an employer to a union workers' welfare trust fund

1. 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959).

2. 391 U.S. 224, 88 S.Ct. 1491, 20 L.Ed.2d 546 (1968).

and to an employee annuity plan were not entitled to priority as "wages" or "commissions" under § 104(a) of the Act. Congress intended § 507(a)(4) to overrule those Supreme Court cases and provide priority for "fringe benefits."[3] The legislative history provides:

Paragraph (4) overrules *United States v. Embassy Restaurant,* 359 US 29 [79 S.Ct. 554, 3 L.Ed.2d 601] (1958 [1959]), which held that fringe benefits were not entitled to wage priority status. The bill recognizes the realities of labor contract negotiations, under which wage demands are often reduced if adequate fringe benefits are substituted. The priority granted is limited to claims for contributions to employee benefit plans such as pension plans, health or life insurance plans, and others, arising from services rendered after the earlier of one year before the bankruptcy case and the date of cessation of the debtor's business.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 357 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6313; S.Rep. No. 989, 95th Cong., 2d Sess. 69 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5855.

This court has joined other courts in holding that claims for unpaid insurance premiums, including workers' compensation, are entitled to fourth priority under § 507(a)(4). *See In re AOV Industries, Inc.,* 85 B.R. 183 (Bankr.D.D.C.1988); *Employers Insurance of Wausau v. Plaid Pantries, Inc.,* 10 F.3d 605 (9th Cir.1993); *In re Saco Local Development Corp.,* 711 F.2d 441 (1st Cir.1983), *aff'g,* 23 B.R. 644 (Bankr.D.Me.1982); *In re Allegheny International, Inc.,* 138 B.R. 171 (Bankr.W.D.Pa.1992), *aff'd,* 145 B.R. 820 (W.D.Pa.1992); *In re Jet Florida Systems, Inc.,* 80 B.R. 544 (S.D.Fla.1987); *but see In re HLM Corp.,* 165 B.R. 38 (Bankr.D.Minn. 1994); *In re Arrow Carrier Corp.,* 154 B.R. 642 (Bankr.D.N.J.1993).

In so holding, the courts conclude that § 507(a)(4) should be read broadly in order to fulfill its purpose of ensuring that employees continue to receive the benefits to which

they are entitled despite employer bankruptcy. *See Plaid Pantries,* 10 F.3d at 607; *In re Saco,* 711 F.2d at 448–49. Accordingly, the courts have rejected several arguments against priority for unpaid insurance premiums. First, courts have rejected the argument that the plans need to be the product of collective bargaining agreements. *See In re Saco,* 711 F.2d at 448–49. The courts reason that "insurance is no less a fringe benefit because it is granted 'unilaterally' rather than being provided under the terms of a collective bargaining agreement." *Id.* Second, courts have refused to limit priority to claims made by employees, allowing priority for claims by insurance companies for premiums paid directly to them. *See Plaid Pantries,* 10 F.3d at 607; *In re Saco,* 711 F.2d at 449; *In re Allegheny,* 138 B.R. at 174–75. The courts reason that "allowing 'the insurer to obtain its premiums through the priority would seem the surest way to provide the employees with the policy benefits to which they are entitled.'" *Plaid Pantries,* 10 F.3d at 607 (quoting *In re Saco,* 711 F.2d at 449). Third, courts have held that claims for unpaid premiums do "aris[e] from services rendered," as required by § 507(a)(4)(A). *See In re AOV,* 85 B.R. at 186; *In re Saco,* 23 B.R. at 648, *aff'd,* 711 F.2d 441.

The trustee attempts to distinguish the present case from those prior decisions based on the fact that workers' compensation in the District of Columbia is statutorily mandated. The trustee argues that because of this statutory mandate, claims for unpaid workers' compensation premiums should not be entitled to priority under § 507(a)(4). The trustee bases this objection to priority on the recent decision in *In re HLM Corp.,* 165 B.R. 38 (Bankr.D.Minn.1994), wherein the court held that unpaid premiums for statutorily mandated workers' compensation were not entitled to priority as contributions to an employee benefit plan under § 507(a)(4). The decision in *In re HLM* is in apparent conflict with the prior decisions of this court in *In re AOV* and the Ninth Circuit in *Plaid Pantries,* holding that claims for unpaid pre-

---

**3.** Priority for "wages, salaries, or commissions" was provided under § 507(a)(3), which was § 104(a)'s replacement in the Code.

miums for mandatory workers' compensation coverage *were* entitled to priority under § 507(a)(4). The trustee in this case urges the court to reject its opinion in *In re AOV* and the Ninth Circuit decision in *Plaid Pantries* in favor of the reasoning employed in *In re HLM*.

In the District of Columbia, workers' compensation coverage for employees is mandatory. *See* D.C.Code Ann. § 36–301 *et seq.* (1981). Section 36–303(b) dictates that "[e]very employer subject to this chapter shall be liable for compensation for injury or death without regard to fault as a cause of the injury or death." In order to guarantee compensation coverage, under § 36–334(a), the employer must either procure insurance coverage or provide satisfactory proof to the mayor that the employer is capable of self-insurance. If the employer does not either procure insurance or submit proof of self-insurance, the employer is liable for a civil fine of $1,000 to $10,000 under § 36–339(a).

Furthermore, if an employee can not collect compensation awarded to him due to the employer's insolvency or otherwise, § 36–319 provides that the employee may seek compensation directly from the District government out of a special fund created under § 36–340. Compensation from the D.C. government is discretionary, however. Section 36–319 specifically provides:

> (b) In cases where judgment cannot be satisfied by reason of the employer's insolvency or other circumstances precluding payment, the Mayor may, in his discretion, and to the extent he shall determine advisable after consideration of current commitments payable from the special fund established in § 36–340, make payment from such fund upon any award made under this chapter, and, in addition, provide any necessary medical, surgical, and other treatment required by § 36–307 in any case of disability where there has been a default in furnishing medical treatment by reason of the insolvency of the employer. Such employer shall be liable for payment into such fund of the amounts paid therefrom by the Mayor under this subsection; and for the purposes of enforcing this liability, the Mayor for the benefit of the fund shall be

subrogated to all the rights of the person receiving such payment or benefits, including the right of lien and priority provided for by § 36–318 as against the employer and may by a proceeding in the name of the Mayor under § 36–320 or under § 36–322(c), or both, seek to recover the amount of the default or so much thereof as in the judgment of the Mayor is possible, or the Mayor may settle and compromise any such claim.

Echoing the decision in *In re HLM*, the trustee argues that because workers' compensation is statutorily mandated in the District and employees may be compensated directly from the District government in the event of employer insolvency, the unpaid premiums in this case should not be entitled to priority. Specifically, the trustee argues that due to the statutory mandate, (1) the workers' compensation insurance premiums are not "contributions;" (2) the workers' compensation is not a "plan;" (3) the payment of unpaid premiums does not "benefit" the employees; and (4) the claims for unpaid premiums do not arise from "services rendered." The court will consider each of these arguments in turn.

### 1. *Are Insurance Premiums for Mandatory Workers' Compensation "Contributions?"*

 The trustee argues that because the workers' compensation premiums are statutorily mandated, the premiums are not "contributions" to an employee benefit plan for purposes of § 507(a)(4). *In re HLM*, 165 B.R. at 40. Supported by *In re HLM*, the trustee contends that in order to be "contributions," as that term is used in the dictionary, the premiums must be voluntarily given. In its terse reasoning on this point, the court in *In re HLM* stated that "[t]ypically, fringe benefits such as health, life and disability insurance are voluntarily given. Yet the payment of workers' compensation insurance premiums is not 'voluntary.' Rather, it is statutorily mandated." 165 B.R. at 40. The trustee argues that if § 507(a)(4) were intended to include mandatory payments, mandated employer social security contributions would also be entitled to priority under

§ 507(a)(4). That Congress did not intend such a result, the trustee argues, is evidenced by the priority provided for taxes under § 507(a)(7).

The court disagrees with the trustee's contention that only voluntary payments are allowed as "contributions" under § 507(a)(4). The argument suggests that in order to be "contributions," the premiums must be specifically bargained for between the employees and employer and reflected in the wages of the employees as some sort of wage substitute. This argument was rejected by the Ninth Circuit in *Plaid Pantries* because such a requirement would make § 507(a)(4) surplusage. 10 F.3d at 607. The court stated:

> Plaid argues that in order to be entitled to a priority the plan benefits must be "wage substitutes;" that is, a substitute for the wages given priority under subsection (3). But we do not so interpret the intent of Congress. By amending Section 507 in 1978 and adding new subsection (4) Congress expanded, and not merely substituted, the priorities.

*Id.*

■ This court is not persuaded that contribution, as used in the statute, is meant to be limited to only voluntary payments. Contribution is a legal term of art commonly used even where payments are not voluntary. For example, contributions made by joint tortfeasors are not voluntary. Use of the broader definition of contribution, including both voluntary and non-voluntary payments, would be more logical in § 507(a)(4). As stated above, the overriding intent of granting priority to these benefit plans is to provide the employees with the policy benefits to which they are entitled. Drawing some sort of distinction between those plans that are voluntarily provided and those that are statutorily mandated is senseless. The employees benefit from the protection provided by the workers' compensation coverage to the same degree whether the plans are voluntary or mandatory.

■ Moreover, singling out statutorily mandated workers' compensation defeats the purpose of the underlying statutory mandate for workers' compensation, which is to guarantee quick and efficient benefits to victims of work related injuries. It is odd logic to suggest that the employees should suffer the risk of lapsed workers' compensation coverage in the event of their employer's insolvency simply because the state has protected workers' compensation with a statutory mandate. This is the sort of protection the employees can do without.[4] Finally, the trustee's reliance on § 507(a)(7), which accords priority to certain taxes, misses the mark. Unlike a tax, which is paid directly to the government, the statute here establishes a plan for payment to an insurer, keeping the government out of the picture except when premiums go unpaid.[5]

Accordingly, the court concludes that, although mandated by statute, the Travelers' unpaid workers' compensation insurance premiums are "contributions" for purposes of § 507(a)(4).

**2. Is Mandated Workers' Compensation Insurance a "Plan?"**

■ Similar to the trustee's argument concerning "contribution," the trustee next argues that statutorily mandated workers' compensation is not a "plan" for purposes of § 507(a)(4). *In re HLM*, 165 B.R. at 40. The court in *In re HLM*, harkening back to its wage substitute reasoning, states that

---

**4.** Even if the court were to accept the trustee's contention that contributions must be voluntary, the unpaid premiums in this case were arguably voluntary. Under the District statute, the debtor was not required to procure insurance to cover workers' compensation. Rather, the employer was only required to provide coverage for workers' compensation and was then given the *choice* to cover the workers' compensation either by procuring insurance or by self-insuring. The insurance premiums only arose after the debtor voluntarily chose to procure insurance.

**5.** That the District may end up paying the employees on their claims does not change the non-tax character of the payment required to be made to the insurer when funds are available. As indicated by the discussion in section 3, *infra*, regarding the provisions for the District to make payment to the employees, the District is subrogated by D.C.Code Ann. § 36–319(b) to the employees' rights against the employer. That may serve further to distinguish this statutory scheme from a tax.

a "plan" is the manner in which an employer elects to compensate an employee in ways other than wages. Given this understanding, workers' compensation insurance is not a "plan", but is rather a statutorily mandated system to spread the risks of work-related injuries.

*Id.* (footnote removed).

This argument was also specifically rejected by the Ninth Circuit in *Plaid Pantries,* where the court concluded that the statutory mandate should not affect the priority of workers' compensation premiums.

> We see no reason for concluding that Congress intended to deny priority to workers' compensation benefit plans while granting the same statutory priority to other plans providing benefits to employees. *Nor can we conclude that Congress intended to distinguish between benefit plans that are contractually promised to employees and those that are statutorily required.* The purpose of the priority, to protect the solvency of benefit plans, is present in both situations.

*Plaid Pantries,* 10 F.3d at 607 (emphasis added).

This court reached a similar conclusion in *In re AOV,* 85 B.R. at 186. Because the Code does not define "employee benefit plan," in *In re AOV,* this court looked to the definition of "employee benefit plan" in the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), to provide guidance. Other courts have looked to ERISA for similar guidance on the grounds that the legislative history of § 507(a)(4) reveals that Congress was urged to adopt the ERISA definition of employee benefit plans when that section was drafted. *See In re Saco,* 23 B.R. at 644; *In re Allegheny,* 138 B.R. at 174–75; *but see In re Jet Florida,* 80 B.R. at 544 (resisted unnecessary application of ERISA definition). The courts reason that where the Code is silent as to the definition of a term, it is helpful to look to another statute where the term is defined, particularly when it appears that the Code drafters considered the definition. *See In re Allegheny,* 138 B.R. at 174–75 (citing *Morissette v. United States,* 342 U.S. 246, 263, 72 S.Ct. 240, 249–50, 96 L.Ed. 288 (1952)).

Section 1002(3) of ERISA states that an " 'employee benefit plan' . . . means an employee welfare benefit plan," which is defined under § 1002(1) as follows:

> The terms "employee welfare benefit plan" and "welfare plan" mean any *plan, fund, or program* which was heretofore or is hereafter *established or maintained by an employer* or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, *through the purchase of insurance or otherwise,* (A) medical, surgical, or hospital care or benefits, or *benefits in the event of sickness, accident, disability, death* or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1) (Supp.1994) (emphasis added).

In *In re AOV,* this court concluded that the ERISA definition embraced statutorily mandated workers' compensation as a "plan . . . maintained by an employer . . . for the purpose of providing . . . through the purchase of insurance . . . benefits in the event of sickness, accident, disability, [or] death. . . ." 85 B.R. at 186.

Further evidence that the ERISA definition of employee benefit plans includes statutorily mandated workers' compensation is the fact that § 1003(b) of ERISA specifically excludes this type of employee benefit plan from coverage under the statute. Section 1003(b) provides:

> (b) The provisions of this subchapter shall not apply to any employee benefit plan if . . .
>
> (3) such plan is maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation of disability insurance laws. . . .

As this court concluded in *In re AOV,* this exclusion clearly indicates that mandated

workers' compensation is contemplated by the definition of employee benefit plans under ERISA. The fact that such a plan is ultimately not covered by ERISA is of no consequence. "We consider the term 'employee benefit plan' in 11 U.S.C. § 507(a)(4) to be consistent with the same term as defined, not as covered, by ERISA." *In re AOV,* 85 B.R. at 186.

As the court reasoned in *Plaid Pantries,* given the purpose of the § 507(a)(4) priority, there appears to be no logical reason for excluding mandated plans from priority. The employees have the same need of the protection provided by the workers' compensation coverage whether the plan is voluntary or mandatory. Indeed, the fact that workers' compensation is statutorily mandated indicates the importance of such coverage.

Accordingly, the court concludes that a statutorily mandated workers' compensation plan is a "plan" as that term is used in the "employee benefit plan" under § 507(a)(4).

### 3. *Do Insurance Premium Payments for a Mandated Plan "Benefit" Employees?*

The trustee's next argument is that the premium payments in this case do not "benefit" the employees as the term "benefit" is used within § 507(a)(4). Rather, the trustee argues, the premium payments benefit the employer because under District law it is the employer who is ultimately liable for the providing workers' compensation coverage. *See* D.C.Code Ann. § 36–303(b). Furthermore, the trustee argues that under District law the employees will still be covered by the District government even if the premiums are not paid by the employer. *See* D.C.Code Ann. § 36–319(b).

■ The court finds the trustee's first argument without merit. Because the payments will benefit the employer does not suggest that the payment will not also still benefit the employees. The fact that the employer is ultimately liable for the workers' compensation liability does not change the fact that payment of the premium will benefit the employees by ensuring their workers' compensation insurance coverage is still in force.

■ The trustee's second argument, however, is more complex. The trustee contends that the employees receive no benefit from payment of this premium because coverage of workers' compensation does not necessitate maintenance of the Travelers' insurance plan. Rather, under District law, if the insurance policy lapses due to employer default, the employees may simply seek coverage for workers' compensation directly from the District government. Accordingly, the trustee argues that the employees should be indifferent about where they apply for coverage. Therefore, the trustee argues it makes no sense to grant priority to these premium payments when there is no direct benefit to the employees.

As before, the trustee's argument echoes the decision in *In re HLM.* Addressing this issue, the court stated:

> The fact that the employer is uninsured does not leave the employee without workers' compensation coverage, for the employee will still receive benefits from a special compensation fund. *See* Minn.Stat. § 176.183, subd. 1 (1992).... Accordingly, the payment of workers' compensation premiums to the insurer does not "benefit" the employee, but rather "benefits" the employer.

*In re HLM,* 165 B.R. at 41. The essence of this analysis appears to be that where there is no difference between the coverage provided by the insurer and the coverage provided by the government, the insurance coverage is unnecessarily duplicative. Accordingly, there is no sense in granting priority to premium payments for the unnecessary insurance coverage because it provides the employees with no benefit.

The court in *In re HLM* went on to state that allowing priority to payments for this duplicative coverage would serve only "'to ensure the financial viability of the workers' compensation insurance industry,'" which is an argument that could be made by any creditor and is not a proper basis upon which to grant priority. 165 B.R. at 42 (quoting *In re Arrow Carrier,* 154 B.R. at 646). The court concluded that

[s]ection 507(a)(4) is not to assure the insurance industry that insurers will be paid their money. It is to ensure that the employees will receive the benefits they bargained for in the course of accepting employment with the debtor. *The employees, in this case, will receive or have received their benefits regardless of whether the insurer is paid its premium.*

*Id.*

This court declines to apply the reasoning in *In re HLM* because the court concludes that the coverage provided by the District government is *not* duplicative of the Travelers' insurance coverage and is thus distinguishable from the statutory scheme addressed in *In re HLM.* The court in *In re HLM* examined the workers' compensation laws in Minnesota. *See* Minn.Stat.Ann. § 176.001 *et seq.* (West 1993). Under Minnesota law, if the employer has not insured or self-insured, "the employee ... *shall* nevertheless receive benefits as provided for in this chapter from the special compensation fund." *See* Minn.Stat.Ann. § 176.183 subd. 1 (emphasis added). As indicated by the court in *In re HLM,* the coverage provided by the state appears to be duplicative of the insurance coverage because if the insurance lapses, the government will pick up the coverage automatically. Compensation from the Minnesota special fund is not discretionary, only requiring a finding that the employee is eligible and that the employer is not insured or self-insured. *See* Minn.Stat.Ann. § 176.183 subd. 2. Thus, it appears that employees in Minnesota indeed might be indifferent about whether, in the event of employer insolvency, they were required to seek coverage from the government fund rather than from the insurance company.

In contrast, the coverage provided by the District government is far less automatic. Under § 36–319, compensation from the District government is decidedly discretionary. To repeat, § 36–319 specifically provides:

(b) In cases where judgment cannot be satisfied by reason of the employer's insolvency or other circumstances precluding payment, *the Mayor may, in his discretion, and to the extent he shall determine advisable after consideration of current commitments payable from the special fund* established in § 36–340, make payment from such fund upon any award made under this chapter....

D.C.Code Ann. § 36–319(b). This court can not conclude from the District statutory scheme that the debtor's employees would be similarly indifferent about being required to apply to the District government for coverage rather than to the insurance company. There is a stark contrast between the guaranteed coverage which is provided by the insurance company, assuming employee entitlement to such coverage, and the uncertain coverage provided by the District government, which is dependent upon the discretion of the mayor and the financial circumstances of the special fund. Under the District statutory scheme, the government does not provide anything close to duplicative coverage, and, hence, it differs significantly from the statutory scheme in Minnesota analyzed by the court in *In re HLM.* Thus, the court finds it unnecessary to reach the question of whether purely duplicative coverage would bar workers' compensation premiums from priority under § 507(a)(4). The District does not provide such coverage and *In re HLM* is distinguishable on this basis.

Accordingly, the court concludes that the employees in this case clearly would "benefit" from the premium payments necessary to maintain the workers' compensation insurance provided by the Travelers.

**4. *Do Claims for Unpaid Premiums Arise from "Services Rendered?"***

██ Finally, the trustee argues that the Travelers' claim for unpaid premiums does not arise from "services rendered within 180 days" as required by § 507(a)(4). Significantly, the trustee does not suggest that the statutory mandate in any way distinguishes the circumstances in this case from those cited above. Rather, the trustee simply contends that the Travelers' claim for unpaid premiums arises only from a failure to pay insurance premiums which the trustee contends is not a service rendered. *In re HLM,* 165 B.R. at 41. The essence of this argument is that providing insurance is somehow not a service. However, this court has spe-

cifically held, along with other courts, that claims for unpaid premiums do "aris[e] from services rendered," as required by § 507(a)(4)(A). *See In re AOV,* 85 B.R. at 186; *In re Saco,* 23 B.R. at 648. The reasoning behind this decision is simple. Insurance companies provide two services. First and most obviously, they reimburse employees for expenses. Second and less obviously, they provide the peace of mind that comes with knowing that if you get hurt, they will pay your expenses. Therefore, the claims for unpaid premiums for the 180 days leading up to the debtor's petition in this case arose from these services rendered in insuring the debtor's employees.

Accordingly, the court concludes that the Travelers' claim for unpaid premiums for the 180 days prepetition did arise from services rendered under § 507(a)(4)(A).

### CONCLUSION

The court concludes that the Travelers' claim against the debtor for unpaid workers' compensation premiums for the 180 days leading up to the debtor's petition date on March 9, 1990, is entitled priority under § 507(a)(4).

The remaining limitation of the statute, under § 507(a)(4)(B), restricts the amount of the Travelers' claim entitled to priority. Travelers' priority claim is limited to the number of employees covered by the insurance policy multiplied by $2,000. Subtracted from this must be the amount paid to these same employees under the § 507(a)(3) wage priority and the "amount paid by the estate on behalf of such employees to any other employee benefit plan." Without an evidentiary hearing, however, this court is unable to determine what portion of the Travelers' claim would be entitled to priority.

Accordingly, it is

ORDERED that the Travelers' motion for summary judgment is GRANTED in part in accordance with this decision and the trustee's motion for summary judgment is DENIED.

It is further

ORDERED that on the 30th day of March, 1995, at 2:00 p.m., the court shall hold a scheduling conference to set a hearing to determine the allowed amount of the Travelers' priority claim.