**In re AER–AEROTRON, INC., Debtor.**

**Bankruptcy No. 93–00048–5–ATS.**

United States Bankruptcy Court, E.D. North Carolina.

May 31, 1995.

Alice C. Stubbs, Stubbs, Perdue, Chesnutt, Wheeler & Clemmons, P.A., Raleigh, NC, for Automatic Vehicle Navigation.

Michael T. Archey, Greensboro, NC, for Jefferson–Pilot Life Ins. Co.

## ORDER ALLOWING OBJECTION TO PRIORITY CLAIM

A. THOMAS SMALL, Chief Judge.

The matter before the court in this chapter 7 case is the objection to the $41,682.32 priority claim (Claim # 38) of Jefferson–Pilot Life Insurance Company filed by Automatic Vehicle Navigation, Inc. (AVN). AVN is a creditor of the chapter 7 debtor, AER–Aerotron, Inc. (Aerotron), that purchased the debtor's assets and assumed many of its liabilities. A hearing was held in Raleigh, North Carolina on March 15, 1995.

The facts are not in dispute. Aerotron was in the business of manufacturing communications equipment, and it provided a group health, dental and term life insurance policy for its employees through Jefferson–Pilot. Aerotron was responsible for paying the insurance premiums, and when the premiums were not paid, Jefferson–Pilot canceled the policy on November 30, 1992.

Aerotron filed for chapter 11 relief on January 11, 1993, and its case was converted to chapter 7 on July 5, 1994. Jefferson–Pilot filed a priority proof of claim for $41,682.32, the unpaid amount of its final month of coverage under Aerotron's policy, and the sole issue is whether Jefferson–Pilot's claim is entitled to priority pursuant to 11 U.S.C. § 507(a)(4).

Section 507(a)(4) states in pertinent part:
(a) The following expenses and claims have priority in the following order ...
(4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—
(A) arising from services rendered within 180 days of the petition or the date of cessation of the debtor's business, whichever occurs first ... [.]

11 U.S.C. § 507(a)(4).

■ Notwithstanding opinions from the United States Courts of Appeals for the First and Ninth Circuits to the contrary, the court concludes that an insurer is not entitled to the priority afforded by § 507(a)(4). *In re Saco Local Development Corp.,* 711 F.2d 441 (1st Cir.1983); *Employers Ins. of Wausau v. Plaid Pantries, Inc.,* 10 F.3d 605, 607 (9th Cir.1993). This conclusion is based on the plain meaning of the statute as well as its legislative history.

Under the Bankruptcy Act of 1898, "only actual 'wages and commissions' had priority." *Employers Ins. of Wausau v. Plaid Pantries, Inc.,* 10 F.3d 605, 607 (9th Cir.1993). In two cases, the United States Supreme Court held that the wage priority in the Bankruptcy Act of 1898 did not include claims for payments owed by a debtor employer to union workers' benefit plans. *United States v. Embassy Restaurant, Inc.,* 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959); *Joint Indus. Bd. of the Elec. Indus. v. United States,* 391 U.S. 224, 88 S.Ct. 1491, 20 L.Ed.2d 546 (1968).

Partially in response to these cases, in the Bankruptcy Reform Act of 1978 Congress expanded the priorities for employee benefits to include fringe benefits other than wages. The priority Congress created in § 507(a)(4) includes contributions to employee benefit plans voluntarily established by employers,

but there is no indication in the statute or its legislative history that the priority extends to creditors other than the debtor's employees.

■ Statutes must be interpreted according to their plain meaning, and sections of the Bankruptcy Code that establish priorities must be narrowly construed. *United States v. Ron Pair Enter., Inc.* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989), *In re HLM Corp.,* 165 B.R. 38, 39 (Bankr.D.Minn.1994). These basic rules of statutory interpretation support the court's conclusion here.

First, § 507(a)(4) grants a priority to "contributions" to an employee benefit plan. In this case, Jefferson–Pilot entered into a business agreement with Aerotron to provide insurance upon the payment of premiums. Jefferson–Pilot certainly had no intention of making a "contribution" to the debtor's employees. The § 507(a)(4) priority would apply to contributions to an employee benefit plan that are made by both employees and by employers. The statute does not, however, provide a priority to third parties. Furthermore, even if a third party were to be subrogated to an employee's claim under § 507(a)(4), that claim would be denied priority pursuant to § 507(d).

Secondly, "[s]ection 507(a)(4) requires that the priority claim arise from a 'service' rendered 180 days prior to the debtor's filing of the petition." *In re HLM Corp.,* 165 B.R. 38, 41 (Bankr.D.Minn.1994). In *HLM,* as in all cases where the insurer is claiming the priority, "the claim for unpaid insurance premiums [does] not arise from a 'service.' Instead, it arises from the debtor's failure to pay its insurer. This is no different from any other claim for a trade debt." *Id.* This can be illustrated as follows. During negotiations for wages and benefits, an employer promises that it will build and equip a breakroom for its employees. The employer hires a general contractor to carry out this promise and the breakroom is duly completed. The employer then files a bankruptcy petition. The employees have already received the promised benefit of their new breakroom, and it will not give these employees any "benefit" at all to prefer the general contractor's claim for the construction costs, to the detriment of all the employer's other creditors, by allowing the contractor to claim the § 507(a)(4) priority.

Finally, in examining the plain meaning of the Bankruptcy Code the court also finds it significant that the statutory cap on the employee benefits priority described in § 507(a)(4)(B) references the wage priority in § 507(a)(3) as a part of the cap's calculation. If insurance companies were meant to be eligible to claim the § 507(a)(4) priority, the priority would not be limited by the amount that employees may collect under the wage priority.

Turning to the legislative history of § 507(a)(4), there are many indications that Congress' main purpose in enacting this new priority was to benefit employees, with an incidental benefit to the employers. The House Report states that "[t]he purpose of this [new] priority, as with the administrative expense priority, is in part to ensure that employees will not abandon a failing business for fear of not being paid. In that sense, it contributes to financial rehabilitation." H.R.REP. No. 595, 95th Cong., 1st Sess. 187 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5963, 6148. The House Report also noted that the new employee benefits priority was "limited to the unused amount of the wage priority" but that the new enactment would also change the priority date from which to measure in order to "provide *additional protection to the employees* of a bankrupt enterprise." *Id.* (emphasis added).

The Senate Report was more terse. The creation of the new priority, it said, overruled *United States v. Embassy Restaurant, Inc.,* 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959) by "recogniz[ing] the realities of labor contract negotiations, where fringe benefits may be substituted for wage demands." S.REP. No. 989, 95th Cong., 2d Sess. 69 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5787, 5855. Still, coupled with the fact that the employee benefits priority is below the wage priority and the Senate Report's observation that the benefit's priority is subject to a dollar limit based on an employee's actual distributions under the wage priority, it is clear that Congress intended the benefits of § 507(a)(4) to accrue to employees. *Id.*

 Thus, in the absence of a statutory provision which clearly creates a priority for an insurer such as Jefferson–Pilot, it should be treated like the hypothetical general contractor who builds the breakroom, which is to say, like any other unsecured trade creditor. As the court stated in *HLM:*

> Section 507(a)(4) is not to assure the insurance industry that insurers will be paid their money. It is to ensure that the employees will receive the benefits they bargained for in the course of accepting employment with a debtor. The employees, in this case, will receive or have received their benefits regardless of whether the insurer is paid its premium.

*In re HLM Corp.,* 165 B.R. 38, 42 (1994). This is certainly true in this case.

Accordingly, AVN's objection to the priority claim of Jefferson–Pilot is **ALLOWED**, and Jefferson–Pilot's claim will be **ALLOWED** as an unsecured claim in the amount of $41,682.32.

**SO ORDERED.**