**In re HLM CORPORATION, Debtor.**

**EMPLOYERS INSURANCE OF WAUSAU, INC., Plaintiff–Appellant,**

v.

**James E. RAMETTE, Trustee of the Bankruptcy Estate of HLM Corporation, Defendant–Appellee.**

**No. 94–4076.**

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1995.

Decided July 28, 1995.

Rodney Honkanen, Minneapolis, MN, argued (Robert A. Judd, on the brief), for appellant.

Randall L. Seaver, Minneapolis, MN, argued, for appellee.

Before BEAM, Circuit Judge, BRIGHT, Senior Circuit Judge and MURPHY, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Employers Insurance of Wausau ("Wausau") provided workers' compensation insurance to the HLM Corporation pursuant to Minnesota's Assigned Risk Plan. Minn.Stat. Ann. §§ 79.251–.252 (West 1986 & Supp. 1995). That plan offers workers' compensation insurance to Minnesota employers who cannot obtain coverage through traditional market channels. *Id.*

This controversy arose when HLM Corporation became bankrupt owing Wausau substantial amounts of money for unpaid insurance premiums. Relying on § 507(a)(4) of the Bankruptcy Code, Wausau sought a priority status for these unpaid premiums incurred within 180 days of the bankruptcy petition. 11 U.S.C. § 507(a)(4) (1988) (amended 1994). Section 507(a)(4) grants a

fourth level priority status for "contributions to an employee benefit plan—arising from services rendered within 180 days before the date of the filing."[1]

The bankruptcy court,[2] on the objection of the trustee, denied Wausau's claim. *In re HLM Corp.*, 165 B.R. 38 (Bankr.D.Minn. 1994). Wausau appealed to the district court, but that court[3] affirmed. *Employers Ins. of Wausau v. Ramette*, 183 B.R. 852 (D.Minn.1994). Wausau appealed. We agree with the district judge and we affirm.

While this is a case of first impression in this circuit, we deem it unnecessary to write at length in light of the excellent analysis of the issue by the bankruptcy judge and the well-written opinion by the district court.

The Bankruptcy Code itself does not define the phrase "contributions to an employee benefit plan," nor does it offer a representative list of "contributions" that would be covered by the Code. Nevertheless, the legislative history is instructive and illuminating.

In referring to the legislative history of the Code section, the bankruptcy judge observed:

> Section 507(a)(4) was included in the Code to overrule *United States v. Embassy Restaurant*, 359 U.S. 29 [79 S.Ct. 554, 3 L.Ed.2d 601 (1959)] (1958) and *Joint Industry Board v. United States*, 391 U.S. 224 [88 S.Ct. 1491, 20 L.Ed.2d 546] (1968) which held that fringe benefits were not entitled to wage priority status. The theory behind § 507(a)(4) is that, in the realities of collective bargaining agreement negotiations, employees may give up certain claims for wages in exchange for fringe benefits. As a result, the fringe benefits earned 180 days before the filing of a

---

1. In full, the text of 11 U.S.C. § 507(a)(4) reads:

   (a) The following expenses and claims have priority in the following order:

   . . . .

   (4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—
   (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
   (B) for each such plan, to the extent of—

   (i) the number of employees covered by each such plan multiplied by $2,000; less
   (ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

2. The Honorable Nancy C. Dreher, United States Bankruptcy Judge for the District of Minnesota.

3. The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

bankruptcy petition should be entitled to priority in the same way and for the same reason that wages are entitled to priority. H.R.Rep. No. 595, 95th Cong., 1st Sess. 357 (1977), [reprinted in] U.S.Code Cong. & Admin.News 1978, p. 5787. The legislative history makes it clear that § 507(a)(4) covers those types of benefits that typically are bargained for in the employer-employee setting whether as part of a collective bargaining arrangement or otherwise.

*In re HLM Corp.*, 165 B.R. at 41.

With this background the opinions below offered the following rationales for rejecting Wausau's claim for a priority position in bankruptcy. According to the bankruptcy court, the plain language of the Code militates against Wausau's contention inasmuch as premiums for workers' compensation insurance are not "contributions to an employee benefit plan," which an employee may bargain for in lieu of higher wages; instead, in Minnesota, workers' compensation insurance is a system mandated by statute. Employers cannot offer (and employees cannot accept) higher wages as a substitute for workers' compensation benefits. *See id.* at 40.

The bankruptcy court additionally reasoned that the "contribution" of insurance premiums does not "benefit" employees within the meaning of "employee benefit plan" because it is primarily the employer, not the employee, who benefits. While workers' compensation programs are certainly designed to benefit employees, the institution of a workers' compensation *insurance* program helps "employers safeguard [their] statutory obligations" by insuring the employer from its liability to provide workers' compensation benefits. *Id.* at 41. Additionally, because the employee would still be entitled to such benefits even if the employer were illegally uninsured, the employer's participation in a workers' compensation insurance fund cannot be understood as a true "benefit." A true "benefit" would be one more commonly associated with, for example, employee life insurance benefits, where unless an employer offered a life insurance benefit plan the employee would not necessarily have coverage. Again, an employee in Minnesota enjoys workers' compensation coverage regardless of the employer's insurance status. *Id.*

The district court opinion echoes the bankruptcy court's analysis, noting that:

[t]he issue before the Court becomes whether, under the plain meaning of its terms, employer workers' compensation insurance premium payments should be equated with bargained-for fringe benefits such as contributions to pension plans, health insurance, or life insurance. The plain meaning of these words shows they should not.

Payments for a workers' compensation policy are not bargained-for substitutes for wages.

*Ramette*, 183 B.R. at 855. The court additionally rejected Wausau's reliance on judicial interpretations of ERISA's use of the phrase, "employee benefit plan." *See* 29 U.S.C. ch. 18 (1988 & Supp. V 1993) (The Employee Retirement Income Security Act of 1974). The court noted that while a workers' compensation insurance policy may fit within the scope of the ERISA definition, "[t]he ERISA definition and associated court guidelines were designed to effectuate the purpose of ERISA, not the Bankruptcy Code." *Id.* at 855. Accordingly, the court refused to read the ERISA definition into § 507(a)(4) of the Bankruptcy Code. *Id.*

The district court opinion concluded that:

Both § 507(a)(4)'s plain language and its legislative history, as reflected in the House and Senate Reports, demonstrate that contributions to an "employee benefit plan" are not the same as employer's workers' compensation premium payments. This construction of the phrase "employee benefit plan" is also consistent with the purposes of the Code. Section 507(a)(4) was adopted specifically to place non-monetary compensation owed by a debtor to its employees on the same level as wage compensation. As discussed, workers' compensation insurance payments are not a wage substitute. More generally, the Code was promulgated to ensure the fair and uniform treatment of creditors. To that end, preferential treatment is given to unsecured creditors only in exceptional circumstances. Wausau has provided no

compelling reason to show why funds should be taken from HLM Corporation's other unsecured creditors and given to it. *Id.* at 856.

The district court also examined cases from other jurisdictions, noting that those decisions were irreconcilable.

> *See In re Arrow Carrier Corp.*, 154 B.R. 642 (Bankr.D.N.J.1993) (holding that unpaid, pre-petition workers' compensation premiums are not "employee benefit plan" contributions under § 507(a)(4)); *Employers Ins. of Wausau v. Plaid Pantries, Inc.*, 10 F.3d 605 (9th Cir.1993) (holding that unpaid, pre-petition workers' compensation premiums are "employee benefit plan" contributions under § 507(a)(4)); *In re Jet Florida Sys., Inc.*, 80 B.R. 544 (S.D.Fla. 1987) (holding that ERISA definition of "employee benefit plan" was not incorporated into § 507(a)(4)); *In re AOV Indus., Inc.*, 85 B.R. 183 (Bankr.D.D.C.1988) (holding that ERISA definition of "employee benefit plan" was incorporated into § 507(a)(4)).

*Id.*

We have examined with care the opinion of the Ninth Circuit in the *Plaid Pantries* case. That decision rejected as irrelevant distinctions between statutorily-mandated insurance programs, such as workers' compensation, and contractually arrived-at insurance benefit plans, such as those for life and health. The court also ruled that plan benefits need not be "wage substitutes" in order to fall within the ambit of § 507(a)(4). *Plaid Pantries*, 10 F.3d at 607. With all due respect to our brethren of the Ninth Circuit, we disagree and believe that they have excessively broadened the reach of the Code language in question.

We conclude that unpaid pre-petition premiums under Minnesota's workers' compensation scheme do not constitute "contributions to an employee benefit plan," and thus do not support Wausau's claimed priority status under § 507(a)(4) of the Bankruptcy Code.

Accordingly, we affirm.