**In re ALLENTOWN MOVING & STORAGE, INC., Debtor.**

Bankruptcy No. 93–23467T.

United States Bankruptcy Court,
E.D. Pennsylvania.

May 28, 1997.

Gloria Satriale, Chester Springs, PA, trustee.

John A. Wetzel, Jeffrey A. Goodman, Swartz, Campbell & Detweiler, Philadelphia, PA, for trustee.

John J. Sellinger, King of Prussia, PA, for Manufacturers Alliance Ins. Co.

### OPINION

THOMAS M. TWARDOWSKI,
Bankruptcy Judge.

This case presents an issue of first impression for this Court; namely, whether a claim for unpaid workers compensation insurance premiums due for insurance coverage within 180 days prior to bankruptcy is entitled to priority status under 11 U.S.C. § 507(a)(4). For the reasons set forth below, I conclude that the debtor's obligation to pay workers compensation insurance does not constitute a contribution to "an employee benefit plan" and therefore is not entitled to priority treatment under the Code.

The basic facts are not in dispute. Allentown Moving & Storage, Inc. ("Allentown Moving"), the debtor in the above-captioned Chapter 7 case, employed at least 12 people within a period of 180 days prior to filing its Chapter 7 petition on December 20, 1993. As required by Pennsylvania law, Allentown Moving contracted with the claimant, Manufacturers Alliance Insurance Company ("MAICO") to provide workers compensation coverage through two separate insurance contracts. The first contract, policy no. 209200–00–25–83–4 ("Policy I"), was in place from September 11, 1992, to September 10, 1993. The second policy, no. 209300–00–15–83–4 ("Policy II") came in force on September 11, 1993, and was scheduled to last for a period one year. Both policies covered Allentown Moving's employees for all benefits due them under Pennsylvania's workers compensation law resulting from work related injuries.

The premiums due for both policies were based on the size of Allentown Moving's payroll. Following the termination of Policy I, an audit revealed that Allentown Moving owed MAICO an additional premium of § 15,450, which following application of a subsequent payment and another credit was reduced to $13,000. Of this figure, the parties agree that $2,808 is the pro rata portion of the premium attributable to Policy I during the time it was in force within 180 days prior to the bankruptcy filing. An audit of Allentown Moving's books taken by MAICO after Allentown Moving filed for bankruptcy and ceased operations resulted in MAICO finding that $10,140 was due and owing on Policy II. Based on these figures MAICO filed a priority proof of claim, designated

claim # 9, for the amount of $12,948. MAICO seeks fourth priority status for the claim under 11 U.S.C. § 507(a)(4) as a contribution to an employee benefit plan.

On September 26, 1996, the Trustee, Gloria Satriale, filed an objection to MAICO's Proof of Claim, contending that MAICO was not entitled to priority status for its claim. At the hearing on January 9, 1997, the parties agreed to litigate the objection based on a stipulated factual record. On January 22, 1997, the parties submitted a stipulation of facts, the most material portions of which are summarized above. The stipulation states the estate is scheduled to pay $7,440 to former employees as priority claims under 11 U.S.C. § 507(a)(3) and that there is no liability for any other type of employee benefit plan. The final brief was filed on February 21, 1997.

Courts across the United States are divided over the question of whether a claim for unpaid workers compensation premiums should receive priority status under 11 U.S.C. § 507(a)(4). Foremost among the courts deciding the issue in the affirmative is the Ninth Circuit Court of Appeals with its decision in the matter of *Employers Ins. of Wausau v. Plaid Pantries, Inc.*, 10 F.3d 605 (9th Cir.1993). In *Wausau*, the Ninth Circuit held that a claim for unpaid workers compensation premiums should be granted priority status because such claims were entitled to "the same statutory priority [as] other plans providing benefits to employees." *Id.* at 607. Workers compensation constituted a "benefit" to workers and the payments appeared to fit within the broad and general statutory perimeters of being contributions to employee benefit plans. *Id.* "We see no reason," the Ninth Circuit stated, "for concluding that Congress intended to deny priority status to workers' compensation plans while granting the same statutory priority to other plans providing benefits to employees." *Id. See also In re Gerald T. Fenton, Inc.*, 178 B.R. 582 (Bankr.D.C.1995); *In re AOV Industries, Inc.* 85 B.R. 183 (Bankr.D.C.1988); *In re Saco Local Development Corp.*, 711 F.2d 441 (1st Cir.1983) (allowing priority to claim for unpaid premiums for a group life health and disability insurance plan which the employer had freely provided to non-unionized employees); *In re Lummus Industries, Inc.*, 193 B.R. 615 (Bankr.M.D.Ga.1996) (granting priority to claim for administrative fee from entity administering debtor's self-insured health plan).

However, other courts have denied priority status. Although these decisions focus partly on the fact that payments to third party insurance carriers provide no benefit to employees, they are also based on the strong presumption against the granting of priority status. In *In re HLM Corp.*, 62 F.3d 224 (8th Cir.1995), *aff'g*, 183 B.R. 852 (D.Minn. 1994), *aff'g*, 165 B.R. 38 (Bankr.D.Minn.1994), the Eighth Circuit Court of Appeals affirmed rulings by the Minnesota district court and bankruptcy court denying priority status. The Eighth Circuit's decision in *HLM Corp.* reviewed the applicable case law, which begins with two venerable Supreme Court decisions, both of which preceded the enactment of the current Bankruptcy Code. On two separate occasions, the United States Supreme Court held that contributions to a union sponsored employee benefit plan did not constitutes wages entitled to priority. *See United States v. Embassy Restaurant, Inc.*, 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959); *Joint Industry Board of the Electrical Industry v. United States*, 391 U.S. 224, 88 S.Ct. 1491, 20 L.Ed.2d 546 (1968).

The United States Congress opted to modify the impact of these decisions when it enacted the Bankruptcy Code in 1978. The revised Code specifically included a new priority for "employee benefit plans," codified at 11 U.S.C. § 507(a)(4), which states as follows:

(a) The following expenses and claims have priority in the following order:

(4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—

(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(*B*) for each such plan, the extent of—

(*i*) the number of employees covered by each such plan multiplied by $2,000; less

(*ii*) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

In explaining the purpose and effect of this section, Congress cited the advent of employee "fringe benefits" obtained through collective bargaining. Speaking generally about the need to give priority to fringe benefits Congress stated:

The Supreme Court has held that the wage priority does not extend to fringe benefits, such as pension find or health insurance contributions. When the wage priority was last amended in 1926, perhaps the intent of Congress was not to extend it in that fashion, because fringe benefits were little heard of at the time. Now, however, to ignore the reality of collective bargaining that often trades wage dollars for fringe benefits does a severe disservice to those working for a failing enterprise.

In recognition of changes since 1926, the bill ... establishes a new category, a fourth priority immediately following the wage priority, for contributions and payments to employee benefit plans. This will include health insurance programs, life insurance plans, pension funds, and all other forms of employee compensation that is not in the form of wages.

H.R. No. 95–595, 95th Cong.2d Sess. 187 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6148. Speaking to the specifics of section 507(a)(4) Congress stated:

Paragraph (4) overrules *United States v. Embassy Restaurant*, 359 U.S. 29 [79 S.Ct. 554, 3 L.Ed.2d 601] (1958), which held that fringe benefits were not entitled to wage priority status. The bill recognizes the realities of labor contract negotiations, under which wage demands are often re-duced if adequate fringe benefits are substituted. The priority granted is limited to claims for contributions to employee benefit plans such as pension plans, health or life insurance plans, and others, arising from services rendered after the earlier of one year before the bankruptcy case and the total of all contributions payable under this paragraph. . . .

*Id.* at 357, reprinted at 1978 U.S.C.C.A.N. 5963, 6313.

In its decision affirming the granting of priority status in *Wausau, supra,* the Ninth Circuit Court of Appeals stressed the legal significance of employee benefits which were obtained as a result of a give and take between labor and management:

[The] system is designed to provide benefits to victims of work related injuries. Those benefits are generally funded by insurance, the premiums for the insurance are paid by the employers, and the costs are passed on in the form of lower wages and higher prices. Those benefits are a form of compensation offered to workers in exchange for the labor that they perform. While the insurance is often statutorily— as · opposed to contractually—mandated, the workers' compensation system is nonetheless a plan of compensation available to workers.

*Id.* at 607.

In my view, the line of reasoning advanced by the Ninth Circuit in *Wausau* contains a fundamental flaw. Simply put, since workers' compensation benefits are a statutory requirement and not obtained through collective bargaining, they cannot be considered a "contribution" to an employee's "benefit plan." Workers compensation renders a benefit to both employer and employee. As Bankruptcy Judge Dreher noted in *In re HLM Corp.* 165 B.R. 38, 41 (Bankr.D.Minn. 1994), workers compensation insurance in effect insures the employer from its liability to provide workers compensation benefits. Therefore, it is unlikely that Congress intended workers compensation premiums to be subject to the same priority status as other forms of worker benefits. *Id.*

*In re HLM Corp.* is the leading case holding that claims for unpaid workers compensation premiums are not entitled to priority treatment. But several other courts have taken a similar stance. *See, e.g., In re Arrow Carrier Corp.,* 154 B.R. 642 (Bankr.D.N.J. 1993); *see also In re AER–Aerotron,* 182 B.R. 725 (Bankr.E.D.N.C.1995). Most recently, in *In re Southern Star Foods, Inc.,* 201 B.R. 291 (Bankr.E.D.Okl.1996), an Oklahoma bankruptcy court denied priority status and in doing so stated that 11 U.S.C. § 507(a)(4) was intended to be "narrowly construed" to apply to " 'fringe benefits' in lieu of wages."

I agree. Therefore, I am entering the following Order:

### ORDER

AND NOW, this 28th day of May, 1997, upon consideration of the Trustee's objection to proof of claim number 9, filed by the Manufacturers Alliance Insurance Company ("MAICO") as a priority claim for $12,948, the parties' stipulation of facts and respective memoranda of law, it is hereby ORDERED and DECREED that the Trustee's objection to MAICO's claim is GRANTED.