**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 21 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

| | |
|---|---|
| In re:<br><br>SOUTHERN STAR FOODS, INC.,<br><br>Debtor,<br><br>——————————————————<br><br>STATE INSURANCE FUND,<br><br>Appellant,<br><br>v.<br><br>SOUTHERN STAR FOODS, INC.;<br>KENNETH G.M. MATHER, Trustee,<br><br>Appellee. | No. 97-7102 |

APPEAL FROM THE
UNITED STATES BANKRUPTCY APPELLATE PANEL
BAP No. EO-96-034
E.D. Oklahoma
(D.C. No. 94-71621)

Submitted on the briefs:

Steven J. Adams and Mary C. Coulson of Gardere & Wynne, L.L.P., Tulsa, Oklahoma (Rodney Hayes, Oklahoma City, Oklahoma, of Counsel) for Appellant.

Kenneth G.M. Mather and Pamela H. Goldberg of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Oklahoma, for Appellee.

Before **BRORBY**, **BARRETT**, and **BRISCOE**, Circuit Judges.

_____

**BRISCOE**, Circuit Judge.

_____


Appellant, the State Insurance Fund (Fund), appeals from the Bankruptcy Appellate Panel (BAP) decision that its claim for unpaid workers' compensation insurance premiums is not entitled to priority status under 11 U.S.C. § 507(a)(4) in the Chapter 7 bankruptcy of the debtor, Southern Star Foods.[1]  See State Ins. Fund v. Mather (In re Southern Star Foods, Inc.), 210 B.R. 838 (10th Cir. B.A.P. 1997).  This appeal presents a purely legal question, which we review de novo. See Broitman v. Kirkland (In re Kirkland), 86 F.3d 172, 174 (10th Cir. 1996). We affirm.

Southern Star contracted with the Fund to provide workers' compensation insurance coverage.  On November 17, 1994, the insurance was canceled.  At the time the coverage was canceled, Southern Star owed the Fund hundreds of thousands of dollars in unpaid premiums.  When an involuntary petition in bankruptcy was filed against Southern Star on December 23, 1994, the Fund

_____

[1]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

claimed priority status for their unsecured creditors' claim under § 507(a)(4), in the amount of $186,898.27.[2] The trustee objected to the Fund's claim of priority status, and the Bankruptcy Court sustained the objection, finding that § 507(a)(4) did not give priority status to a claim for unpaid workers' compensation premiums. The Fund appealed the decision to the BAP, which affirmed the denial of priority status under § 507(a)(4) in a very thorough and well-reasoned opinion.

The relevant portion of § 507(a)(4) provides:

(a) The following expenses and claims have priority in the following order;
(4) Fourth, allowed unsecured claims for contributions to an employee benefit plan--
(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
(B) for each such plan, to the extent of--
(I) the number of employees covered by each such plan multiplied by $4,000; less
(ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.[3]

The position of the parties in this appeal is simple and straightforward. The Fund argues that the unpaid workers' compensation insurance premiums

---

[2]    The parties have stipulated that this is the amount of premiums incurred within 180 days of the petition date. See 11 U.S.C. § 507(a)(4) (providing for priority of certain claims arising from services rendered within 180 days before the filing of the petition).

[3]    Paragraph (3) provides priority for unpaid wages.

owed to it by Southern Star are contributions to an employee benefit plan within the meaning of § 507(a)(4), and are, therefore, entitled to priority status. The trustee argues that they are not.

We begin our analysis with the premise that the overriding objective in bankruptcy cases is equal distribution of the debtor's limited resources among its creditors. See Isaac v. Temex Energy, Inc. (In re Amarex, Inc.), 853 F.2d 1526, 1530 (10th Cir. 1988). To that end, statutory priorities must be narrowly construed. See id.

The Bankruptcy Code does not define "contributions to an employee benefit plan." The Fund urges us to look to the Employee Retirement Income Security Act of 1974 (ERISA) and apply the definition of "employee benefit plan" set forth in that statute to § 507(a)(4). We decline to read the ERISA definition of "employee benefit plan" into the Bankruptcy Code. We agree with the Eighth Circuit that "'[t]he ERISA definition and associated court guidelines were designed to effectuate the purpose of ERISA, not the Bankruptcy Code.'" Employers Ins. of Wausau, Inc. v. Ramette (In re HLM Corp.), 62 F.3d 224, 226 (8th Cir. 1995) (quoting Employers Ins. of Wausau, Inc. v. Ramette (In re HLM Corp.), 183 B.R. 852, 855 (D. Minn. 1994)); accord In re The Montaldo Corp., 207 B.R. 112, 115 (Bankr. M.D.N.C. 1997); Official Labor Creditors Comm. v. Jet Florida Sys., Inc. (In re Jet Florida Sys., Inc.), 80 B.R. 544, 547 (S.D. Fla.

1987); see also United States v. Reorganized CF&I Fabricators of Utah, Inc., 518 U.S. 213, 116 S. Ct. 2106, 2111-13 (1996) (declining to apply usage of term in Internal Revenue Code to term in Bankruptcy Code, absent some Congressional indication). Further, broadening the Bankruptcy Code by incorporating the ERISA definition into the § 507(a)(4) priority determination would be contrary to the tenet that priorities are to be narrowly construed. See In re Amarex, Inc., 853 F.2d at 1530.

Two other circuit courts have addressed the issue of whether workers' compensation premiums are contributions to an employee benefit plan within the meaning of § 507(a)(4) so as to be entitled to priority status, and they reached opposite conclusions. Compare Employers Ins. of Wausau, Inc. v. Ramette (In re HLM Corp.), 62 F.3d 224, 227 (8th Cir. 1995) (holding that unpaid workers' compensation premiums were not contributions to an employee benefit plan entitled to priority status), aff'g 183 B.R. 852 (D. Minn. 1994), aff'g 165 B.R. 38 (Bankr. D. Minn. 1994), with Employers Ins. of Wausau v. Plaid Pantries, Inc., 10 F.3d 605, 607 (9th Cir. 1993) (holding that unpaid workers' compensation premiums were entitled to priority status under § 507(a)(4)). Other courts finding that claims for workers' compensation premiums were not entitled to priority under § 507(a)(4) include In re Southern Star Foods, Inc., 210 B.R. at 844, aff'g 201 B.R. 291 (Bankr. E.D. Okla. 1996); and In re Allentown Moving & Storage,

Inc., 208 B.R. 835, 837 (Bankr. E.D. Pa. 1997), aff'd 214 B.R. 761 (E.D. Pa.

1997). Other cases finding that claims for workers' compensation premiums were

entitled to priority include In re Braniff, Inc., 218 B.R. 628, 635 (Bankr. M.D.

Fla. 1998) (deciding issue without examining legislative history, and adopting the

position in In re Gerald T. Fenton, Inc. with no discussion of ERISA); In re

Gerald T. Fenton, Inc., 178 B.R. 582, 587-88, 590 (Bankr. D. D.C. 1995)

(applying ERISA definition of "employee benefit plan"); and Perlstein v.

Rockwood Ins. Co. (In re AOV Indus., Inc.), 85 B.R. 183, 186, 189 (Bankr. D.

D.C. 1988) (same).[4]

Before we can answer this question of first impression in this Circuit, we

must first determine whether the meaning of the statute is evident from its plain

---

[4]     Also helpful to our analysis, although not directly on point, are the
decisions that have reached the question of priority with regard to premiums for
types of insurance other than workers' compensation. Compare In re The
Montaldo Corp., 207 B.R. 112, 115-16 (Bankr. M.D.N.C. 1997) (holding no
priority for health insurance premiums for past coverage because payment for past
coverage benefits only third-party insurer, not employees); In re AER-Aerotron,
Inc., 182 B.R. 725, 726-27 (Bankr. E.D.N.C. 1995) (finding no priority for group
health/life insurance premiums because legislative history and plain meaning of
statute indicate priority is meant for employees, not third parties), with Official
Creditors' Comm. of Lummus Indus., Inc. v. Blue Cross & Blue Shield of
Georgia, Inc. (In re Lummus Indus., Inc.), 193 B.R. 615, 617-18 (Bankr. M.D.
Ga. 1996) (finding unreimbursed health insurance claims under self-funded
insurance plan entitled to priority where self-insurance plan was part of the
compensation for debtor's employees); Official Labor Creditors Comm. v. Jet
Florida Sys., Inc. (In re Jet Florida Sys., Inc.), 80 B.R. 544, 547-48 (S.D. Fla.
1987) (finding employee claims for unreimbursed insurance claims under self-
insurance plan entitled to priority).

language, or if the phrase is ambiguous. The split in the circuits is, in itself, evidence of the ambiguity of the phrase "contributions to an employee benefit plan;" its meaning is not evident based on the plain language of the statute. Because the phrase is ambiguous, we turn to the legislative history of the statute to aid our analysis. See United States v. Simmonds, 111 F.3d 737, 742 (10th Cir. 1997).

Like the BAP, we agree with the Eighth Circuit that the legislative history clarifies that § 507(a)(4) grants priority for "fringe benefits" accepted in lieu of wages. In re HLM, Corp., 62 F.3d at 225-26.[5] In enacting § 507(a)(4), Congress stated:

> The Supreme Court has held that the wage priority does not extend to fringe benefits, such as pension fund or health insurance contributions. When the wage priority was last amended in 1926, perhaps the intent of Congress was not to extend it in that fashion, because fringe benefits were little heard of at the time. Now, however, to ignore the reality of collective bargaining that often trades wage dollars for fringe benefits does a severe disservice to those working for a failing enterprise.
>     In recognition of changes since 1926, the bill . . . establishes a new category, a fourth priority immediately following the wage priority, for contributions and payments to employee benefit plans.

---

[5]     The fact that the holding of In re HLM Corp. is based on Minnesota's workers' compensation scheme does not negate its persuasive authority. Only a small portion of the court's reasoning is based on the unique aspects of that state's statutory scheme; the bulk of the analysis is based on general workers' compensation characteristics. The factual distinctions between Oklahoma's and Minnesota's statutory schemes do not vitiate the applicability of In re HLM Corp. to this case.

> This will include health insurance programs, life insurance plans, pension funds, and all other forms of employee compensation that is not in the form of wages.

H.R. Rep. No. 95-595, at 187 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6148 (footnotes omitted). Specifically addressing § 507(a)(4), the legislative history provides:

> Paragraph (4) overrules United States v. Embassy Restaurant, 359 U.S. 29 (195[9]), which held that fringe benefits were not entitled to wage priority status. The bill recognizes the realities of labor contract negotiations, under which wage demands are often reduced if adequate fringe benefits are substituted. The priority granted is limited to claims for contributions to employee benefit plans such as pension plans, health or life insurance plans, and others, arising from services rendered after the earlier of one year before the bankruptcy case and the date of cessation of the debtor's business.

Id. at 357, reprinted in 1978 U.S.C.C.A.N. 5963, 6313 (footnotes omitted); see also S. Rep. No. 95-989, at 69 (1978) reprinted in 1978 U.S.C.C.A.N. 5787, 5855.

The legislative history makes it clear that Congress enacted § 507(a)(4) to benefit employees. It recognized the reality that employees often bargain for fringe benefits in lieu of higher wages. The two Supreme Court cases that gave rise to the enactment of § 507(a)(4) both involved plans organized to provide benefits for employees pursuant to collective bargaining agreements. See Embassy Restaurant, 359 U.S. at 29-30 (contributions owed by employer to welfare fund); Joint Indus. Bd. of Elec. Indus. v. United States, 391 U.S. 224, 225 (1968) (contributions owed by employer to employees' annuity plan). In those

cases, the Court denied priority status under the statutory priority for wages in effect at the time, for contributions to plans that provided fringe benefits for employees.  Section 507(a)(4) was enacted to change that result.

Workers' compensation coverage, on the other hand, is not a fringe benefit that an employee can bargain for, either explicitly or impliedly, in lieu of higher wages.  It is not a fringe benefit or wage substitute, as contemplated by Congress in enacting § 507(a)(4).  In addition, the legislative history indicates that workers' compensation is not an employee benefit plan because the coverage benefits the employer at least as much, if not more, than the employee.  As both the Bankruptcy Court and the BAP recognized, "since workers' compensation premiums are required to meet an obligation imposed by the state, they were primarily for Southern Star's benefit, not its employees." In re Southern Star Foods, 210 B.R. at 843.  To that end,

> [t]he purpose of the Oklahoma workers' compensation benefit scheme simply cannot be interpreted as a "fringe benefit" supplementing wages.  In fact, the scheme was a compromise between workers and employers in which the workers gave up the right to sue for damages for work-related injuries, and the employers gave up certain defenses, such as the "fellow servant rule." Carroll [v. District Court], 579 P.2d [828,] 830 [(Okla. 1978)].  The Oklahoma Supreme Court observed, "[e]very common-law right of the workman has been abrogated, and another right substituted, not governed by common-law rules. . . .  The injured workman can no longer use common-law rules . . . to extract compensation for injuries sustained by him." Brooks v. A.A. Davis & Co., 254 P. 66, 70 (1926).

Id. at 844.

In reaching our holding today, we are mindful of the Ninth Circuit decision in Plaid Pantries, with which we respectfully disagree. That court examined the legislative history, but interpreted it differently in holding that premiums owed for workers' compensation coverage were entitled to priority under § 507(a)(4). See Plaid Pantries, 10 F.3d at 607. In deciding that the benefit need not be a wage substitute, that court construed the statutory priority broadly, something we must guard against. The court in Plaid Pantries cites In re Saco Local Dev. Corp., 711 F.2d 441 (1st Cir. 1983) in support of its holding. We note that In re Saco is not inconsistent with our holding in this case. That court considered the question of whether § 507(a)(4) was intended to afford priority only for contributions made to benefit plans that resulted from a formal collective bargaining process. See id. at 448-49. In holding that the legislative history did not limit the fringe benefit priority to those benefits resulting from formal collective bargaining, the court noted that the record contained evidence that the group life/health/disability plan resulted in a de facto bargain for which employees accepted lower wages than other firms paid. See id. In re Saco does not conflict with our holding in this case.[6]

---

[6] Because it is not necessary to our decision in this case, we do not reach the question of whether Congress intended that third parties, such as

(continued...)

We hold that premiums for workers' compensation insurance are not contributions to an employee benefit plan as contemplated by Congress in the enactment of § 507(a)(4). Therefore, a claim for unpaid workers' compensation premiums is not entitled to priority status under that statute. AFFIRMED.

---

[6](...continued)
insurance companies, may claim the priority afforded in § 507(a)(4). Compare In re Saco, 711 F.2d at 449 (holding that "[t]o allow the insurer to obtain its premiums through the priority would seem the surest way to provide the employees with the policy benefits to which they are entitled."), with In re Montaldo, 207 B.R. at 117 (finding that to allow insurance company priority would be contrary to § 507(d)); In re AER-Aerotron, 182 B.R. at 727 (finding that § 507(a)(4) does not provide priority to third parties).