*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0259P (6th Cir.)
File Name: 00a0259p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re: BIRMINGHAM-
NASHVILLE EXPRESS, INC.,

                *Debtor.*

_____

TRAVELERS PROPERTY
CASUALTY CORPORATION,

                *Appellant,*

       *v.*

BIRMINGHAM-NASHVILLE
EXPRESS, INC.,

                *Appellee.*

No. 99-5476

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 98-00497—Robert L. Echols, Chief District Judge.

Argued: March 15, 2000

Decided and Filed: August 1, 2000

1

Before:  RYAN, MOORE, and FARRIS[*], Circuit Judges.

_____

**COUNSEL**

**ARGUED:**    Eric G. Waxman, PHILLIPS, NIZER, BENJAMIN, KRIM & BALLON, Garden City, New York, for Appellant.  Barbara D. Holmes, HARWELL, HOWARD, HYNE, GABBERT & MANNER, Nashville, Tennessee, for Appellee.  **ON BRIEF:**  Eric G. Waxman, PHILLIPS, NIZER, BENJAMIN, KRIM & BALLON, Garden City, New York,  C. Bennett Harrison, Jr., CORNELIUS & COLLINS, Nashville, Tennessee, for Appellant.  Barbara D. Holmes, Craig V. Gabbert, Jr., HARWELL, HOWARD, HYNE, GABBERT & MANNER, Nashville, Tennessee, for Appellee.

_____

**OPINION**

_____

RYAN, Circuit Judge.  We must decide in this appeal whether a claim for unpaid workers' compensation insurance premiums owed by a bankrupt estate is entitled to priority under 11 U.S.C. § 507(a)(4).  Both the bankruptcy court and the district court thought not, relegating the appellant, Travelers Property Casualty Corporation (TPCC), to the status of one among many general unsecured creditors of the bankrupt estate, Birmingham-Nashville Express, Inc. (BNE).  TPCC has appealed the lower court orders and we hold, in this question of first impression in this court, that a claim for unpaid workers' compensation insurance premiums is not entitled to section 507(a)(4) priority status.  We must, therefore, affirm.

_____

[*] The Honorable Jerome Farris, Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

## I.

Under Tennessee law, all Tennessee corporations must purchase insurance to cover any liability for workers' compensation claims or demonstrate to the Commissioner of Commerce the financial ability to cover all claims that may arise. Tenn. Code Ann. § 50-6-405. BNE, a freight carrier incorporated in Tennessee, fulfilled its statutory obligation by purchasing workers' compensation insurance from TPCC.

On December 20, 1996, BNE filed a chapter 11 bankruptcy petition to reorganize its operation. It is undisputed that for six months before filing its petition BNE failed to pay insurance premiums owed to TPCC. TPCC submitted a proof of claim to the bankruptcy court, asserting that premiums unpaid 180 days prior to the filing of BNE's petition constituted an unsecured claim entitled to priority under 11 U.S.C. § 507(a)(4). BNE responded that TPCC's claim was not entitled to section 507(a)(4) priority and this suit followed.

Section 507(a)(4), the dollar amounts of which were amended in 1998, provides:

The following expenses and claims have priority in the following order:

. . . .

[f]ourth, allowed unsecured claims for *contributions* to an *employee benefit plan*—

(A) arising from *services rendered* within 180 days before the date of the filing of the petition or date of the cessation of the debtor's business, whichever occurs first; but only

(B) for each such plan, to the extent of—

(i) the number of employees covered by each such plan multiplied by $4,000; less

**(ii)**  the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(4) (West 1993 & Supp. 2000) (emphasis added) (footnote omitted).

After ruling in TPCC's favor on a procedural objection to TPCC's claim, the bankruptcy court held that TPCC's claim was not entitled priority. That court articulated three bases for its ruling. It held, first, that a "contribution" within the meaning of section 507(a)(4) must be "something given voluntarily to a common source." Because Tennessee law mandated the provision of some type of insurance to cover workers' compensation claims, the court concluded that BNE had performed no "voluntary act equating to a 'contribution.'" Second, the court held that a program said to constitute an "employee benefit plan" under section 507(a)(4) must "direct[ly] benefit" employees. In the bankruptcy court's opinion, workers' compensation insurance did not meet this criterion. Third, in deciding that TPCC's claim did not arise from "services rendered," the court stated:

Yet another requirement for priority treatment for [TPCC's] claim is that the contributions to the employee benefit plan "arise from services rendered." Accepting [TPCC's] argument would force this court to conclude that payment of the workers' compensation premium arose from services rendered. It seems clear that the unpaid premiums did not arise from "services rendered," but instead arose from the employer's failure to meet its obligations to [TPCC.]

Accordingly, the bankruptcy court dismissed TPCC's claim.

Pursuant to Federal Rule of Bankruptcy Procedure 8013, TPCC appealed to federal district court. The district court affirmed, echoing the rationale provided by its predecessor:

run workers' compensation insurance program, we must in fairness treat private insurers similarly.

We disagree. It is quite common for Congress to provide better treatment in the Bankruptcy Code for government creditors than is provided for private creditors. We recognized this fact in *In re Suburban* when we stated that "the workings of Government cannot await bankruptcy distribution alongside unsecured creditors, with the possibility, even the probability of receiving pennies on the dollar of what the taxpayer-debtor owed." *Id.* at 342. Given that Congress often treats public creditors differently than private creditors, we cannot accept TPCC's proposition that this court's prior treatment of the "excise tax" priority dictates our construction of 11 U.S.C. § 507(a)(4). Rather, the two priority provisions are intended to serve different purposes, and we, therefore, think it better to analyze each independently.

## V.

TPCC argues finally that the bankruptcy court erred in holding that its claim was not entitled priority because its claim did not "arise from services rendered." Given our disposition of the issues we have discussed, it is not necessary that we decide this issue and so we leave resolution of the meaning of the term "services rendered" in section 507(a)(4) to another day.

## VI.

For the foregoing reasons, the district court order affirming the bankruptcy court is **AFFIRMED**.

*Restaurant*, 359 U.S. at 31. To be clear, however, we do not hold that to qualify for priority under section 507(a)(4) the wage substitute must actually be the product of collective bargaining. We are in agreement with the First Circuit that reading a collective bargaining restriction into section 507(a)(4) would "create a distinction without a difference." *See Saco*, 711 F.2d at 449.

Workers' compensation is not a wage substitute; rather, it is an award arising out of a work-related injury owed by an employer. Consequently, we hold that TPCC's assertion of priority again must fail because workers' compensation insurance is not an "employee benefit plan."

We also hold, as the Eighth and Tenth Circuits have done before, that incorporation of ERISA definitions into the Bankruptcy Code is ill-advised. Those two pieces of legislation serve different and non-overlapping purposes. *See In re Southern Star Foods*, 144 F.3d at 714. We, therefore, decline TPCC's invitation and leave such action, if it is appropriate, to Congress.

## IV.

TPCC also advanced the separate argument not tied to any of the specific terms of section 507(a)(4) that this court's decision in *In re Suburban Motor Freight, Inc.*, 998 F.2d 338, 342 (6th Cir. 1993), leads by analogy to a decision in its favor here. In *In re Suburban*, this court decided that an unsecured claim by the State of Ohio for fees unpaid by the bankrupt estate to the Ohio Bureau of Workers' Compensation qualified for priority under then-section 507(a)(7)(E) of the Bankruptcy Code, which provided priority to claims by a "governmental unit" for "an excise tax on . . . a [pre-petition] transaction." 11 U.S.C. § 507(a)(7)(E), *amended in 1998 by* § (a)(8)(E) (West Supp. 2000); *In re Suburban*, 998 F.2d at 339. We concluded that the fees were "taxes" because Ohio's workers' compensation program was centralized and universal and all "similarly situated . . . firms" paid the fees. *In re Suburban*, 998 F.2d at 341-42. TPCC contends that because this circuit provided priority to a claim by one state-

The Court . . . agrees . . . that "[a] 'contribution' is something given voluntarily to a common source. . . . The word 'contribution' generally connotes an optional choice, such as an employer's decision to provide fringe benefits like health, life or disability insurance." . . . In this case, the Debtor was statutorily obligated to provide a workers' compensation insurance program. "[S]ince workers' compensation benefits are a statutory requirement and not obtained through a collective bargaining, they cannot be considered a 'contribution' to an employee 'benefit plan.'"

The district court also agreed with the bankruptcy court that "workers' compensation insurance does not qualify as an employee benefit plan for purposes of section 507(a)(4)."

In this appeal, TPCC argues that there are numerous flaws in both lower court opinions. TPCC contends that the lower courts erred in restricting the term "contribution" to funds provided "voluntarily" because such a restriction is not entirely consistent with either the ordinary use of that term or the policies underlying section 507(a)(4). TPCC next maintains that, contrary to the bankruptcy court's opinion, workers' compensation insurance does provide "direct benefit[s]" to employees. Beyond challenging that aspect of the bankruptcy court's opinion, TPCC urges this court to read the definition of "employee benefit plan" provided in ERISA, which includes workers' compensation insurance, into section 507(a)(4) of the Bankruptcy Code. TPCC also contends that the bankruptcy court's construction of the term "services rendered" is illogical and will likely cause mischief in future cases.

BNE responds that the lower courts were correct that a "contribution" within the meaning of section 507(a)(4) must have been provided "voluntarily" by the contributor. BNE also cautions that incorporation of ERISA definitions for like terms into the Bankruptcy Code is unwise as those two bodies of legislation serve different purposes. Finally, BNE argues that, even if the bankruptcy court misconstrued the term

"services rendered," such error does not alter the ultimate result in this case.

## II.

The sole issue in this case is the meaning and effect of 11 U.S.C. § 507(a)(4), a pure question of law necessitating *de novo* review by this court. To repeat, that statute provides:

> The following expenses and claims have priority in the following order:
>
> · · · ·
>
> [f]ourth, allowed unsecured claims for *contributions* to an *employee benefit plan*—
>
> **(A)** arising from *services rendered* within 180 days before the date of the filing of the petition or date of the cessation of the debtor's business, whichever occurs first; but only
>
> **(B)** for each such plan, to the extent of—
>
>> **(i)** the number of employees covered by each such plan multiplied by $4,000; less
>>
>> **(ii)** the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(4) (West 1993 & Supp. 2000) (emphasis added) (footnote omitted). Questions as to the scope of section 507(a)(4) have proved troublesome to the federal courts primarily because Congress has not defined the terms "contribution," "employee benefit plan," or "services rendered" and, as of this writing, the Supreme Court has not interpreted this language either.

"employee benefit plan" should only encompass "wage substitutes." *Id.* at 607. Instead, the Ninth Circuit concluded that Congress's primary concern in enacting section 507(a)(4) was ensuring that employees of the bankrupt estate receive "'the policy benefits to which they are entitled'" and, accordingly, adopted an expansive construction of "employee benefit plan" which included workers' compensation insurance. *Id.* (citation omitted). That court expressly left aside the question whether the ERISA definition of "employee benefit plan" should be incorporated into section 507(a)(4). *Id.*

Under sections 1002(1)-(3) and 1003(b) of ERISA, workers' compensation insurance is indeed listed as an "employee benefit plan." 29 U.S.C. §§ 1002(1)-(3) & 1003(b). A few bankruptcy courts have expressed the view that the ERISA definition of "employee benefit plan" is of some use in construing section 507(a)(4). *See, e.g., In re Gerald T. Fenton, Inc.*, 178 B.R. 582, 587 (Bankr. D.D.C. 1995). Most federal courts, however, have rejected this reasoning. *See HLM Corp.*, 62 F.3d at 226. We believe the latter group has the better of the argument.

It is indisputable that Congress enacted section 507(a)(4) to abrogate the Supreme Court's construction of the previous wage priority provision, 11 U.S.C. § 104(a)(2) (repealed 1978), detailed in *Joint Industry* and *Embassy Restaurant*. *See, e.g., Saco*, 711 F.2d at 448. It is clear that under section 507(a)(4) employee claims to benefits provided by programs such as welfare and annuity funds are entitled to priority. That is, section 507(a)(4) ensures that employees of the bankrupt estate receive priority on their claims not only for wages, but also for wage substitutes provided through "employee benefit plans." Beyond that, it is not at all clear what the term "employee benefit plan" means. Without a clearer statement from Congress, this court must adhere to the principle that priorities are to be construed narrowly and that statutory language creating an asserted priority must be clear and explicit. Accordingly, we hold that the term "employee benefit plan" is limited to wage substitutes. *See Embassy*

### III.

Both the bankruptcy court and the district court held that workers' compensation insurance coverage is not an "employee benefit plan" within the meaning of section 507(a)(4). TPCC argues that this view is mistaken and that the term "employee benefit plan" in section 507(a)(4) includes workers' compensation coverage just as is provided in ERISA. 29 U.S.C. §§ 1002(1)-(3) & 1003(b). For the reason we shall now explain, we disagree.

The federal courts have not agreed on whether workers' compensation insurance is an "employee benefit plan" within the meaning of section 507(a)(4). Both the Eighth and Tenth Circuits have concluded that workers' compensation coverage is not an "employee benefit plan" under section 507(a)(4). In *In re HLM Corp.*, 62 F.3d 224 (8th Cir. 1995), the Eighth Circuit concluded that, based upon the legislative history of section 507(a)(4), the term "employee benefit plan" should be limited to "'bargained-for substitutes for wages.'" *Id.* at 226-27 (citation omitted). The court then held that workers' compensation insurance is not a wage substitute and, accordingly, rejected the insurer's claim to priority. *Id.* That court also rejected the argument that the ERISA definition of "employee benefit plan" should be incorporated into section 507(a)(4). *Id.*

The Tenth Circuit relied heavily on *HLM Corp.* when it confronted this issue and in large part adopted the reasoning of that opinion. *In re Southern Star Foods, Inc.*, 144 F.3d 712 (10th Cir.), *cert. denied*, 525 U.S. 978 (1998). That court agreed with the Eighth Circuit that the ERISA definition should not be used here as an interpretive aid because "[t]he ERISA definition and associated court guidelines were designed to effectuate the purpose of ERISA, not the Bankruptcy Code." *See id.* at 714 (internal quotation marks and citations omitted).

The Ninth Circuit has reasoned otherwise in *Employers Insurance of Wausau v. Plaid Pantries, Inc.*, 10 F.3d 605 (9th Cir. 1993). That court rejected the argument that the term

Section 507(a)(4) is Congress's 1978 response to *United States v. Embassy Restaurant, Inc.*, 359 U.S. 29 (1959), and *Joint Industry Board v. United States*, 391 U.S. 224 (1968). Those cases established that 11 U.S.C. § 104(a)(2) (repealed 1978), the predecessor of section 507(a)(4), did not grant priority to claims for unpaid employer contributions to union-operated welfare and annuity funds. *See Joint Indus.*, 391 U.S. at 228-29; *Embassy Restaurant*, 359 U.S. at 33-35. No one disputes that subsequently enacted section 507(a)(4) provides that the claims of the type treated by the Supreme Court in those cases are now entitled to priority. Thus, it is clear that an unsecured claim for unpaid contributions to a union-operated employee benefit plan is entitled priority under section 507(a)(4). Beyond that, however, section 507(a)(4) leaves many questions unanswered, including the one before us today.

We note, at the threshold, that the fundamental principle running through all of the Bankruptcy Code is that creditors should generally be treated equally. *See Embassy Restaurant*, 359 U.S. at 31. An obvious corollary of this principle is that, if the claims of a class of creditors are to receive preferential treatment from the courts, the right to such treatment must have been authorized by Congress in clear and precise terms. *See id.* Whether we might think granting priority to the type of claim asserted by TPCC would be sound policy is really of no moment; the issue is whether Congress has provided for it. *See In re White Motor Corp.*, 831 F.2d 106, 110 (6th Cir. 1987).

To answer that question, we inquire first whether unpaid premiums for workers' compensation insurance are "contributions" within the meaning of section 507(a)(4). The word "contribute" generally describes the giving of something "*along with others* to a common, supply, fund, etc." THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 318 (1981) (emphasis added). As TPCC argues forcefully, a "contribution" can also mean "an impost or levy." *Id.* A characteristic common to both uses is that the "contributions" clearly come from more than one source. The primary

definition of the term "contribute" expressly notes giving "along with others." *Id.* Ordinarily, an "impost or levy" is paid by some or all of the general public in exchange for some government service. Thus, our analysis is that the term "contribution" does not describe a unilateral purchase of some product or service.

It is, of course, useful to know how our sister circuits have interpreted "contributions" in connection with section 507(a)(4). The First Circuit addressed this question in the context of a priority claim for unpaid premiums asserted by a provider of life, health, and disability insurance. *In re Saco Local Dev. Corp.*, 711 F.2d 441 (1st Cir. 1983). In that case, the trustee argued that an insurer's claim is not entitled to priority status under section 507(a)(4) if the bankrupt estate had been paying for the insurance without contributions from its employees. *See id.* at 448. The First Circuit rejected this argument, concluding that "the record contains testimony that the plan resulted in a de facto 'bargain' in which employees accepted lower wages than other firms paid in return for a noncontributory plan." *Id.* Thus, the First Circuit held that, even where employees do not devote a portion of their gross wage in partial payment for some type of benefit, these employees still may have "contributed" to an "employee benefit plan" if the creditor can demonstrate that employee wages had been reduced to provide funding for a benefit plan.

We are not entirely persuaded that the term "contribution" in section 507(a)(4) should be construed to include constructive contributions by employees, particularly since priorities are to be interpreted narrowly. *See Embassy Restaurant*, 359 U.S. at 31-32. However, we need not decide whether to adopt the First Circuit's *de facto* contribution standard because, even if we were to adopt that analytical method, TPCC's assertion of priority for its claim to unpaid workers' compensation premiums would fail since the workers' compensation insurance it sold was paid for solely by BNE as required by Tennessee law and, therefore, BNE's employees made no "contribution."

TPCC argues that, as in *Saco*, BNE reduced the wages of its employees to offset the cost of workers' compensation insurance and, therefore, the employees did "contribute" to the purchase of that insurance. Our response is two-fold. First, there is no evidence to support TPCC's assertion. Second, it would have been absurd and arguably unlawful for BNE to require its employees to pay for workers' compensation insurance. Workers' compensation programs are a legislative choice to remove from the courts employee tort suits alleging work-related injuries and to assign such claims for compensation to an administrative forum. A workers' compensation award, which TPCC's insurance covers, is intended to remedy an employee's injury. We do not accept the notion that an employer such as BNE could ask its employees to pay, even in part, for what amounts to the employer's "liability" for injuries suffered in the workplace. Consequently, we find TPCC's argument to be without merit.

For what it is worth, we agree with TPCC that both lower courts erred in ruling that a "contribution" within the meaning of section 507(a)(4) must be "something given voluntarily." This particular gloss upon section 507(a)(4) has appeared in the opinions of a number of lower courts. *See*, *e.g.*, *In re Allentown Moving & Storage, Inc.*, 208 B.R. 835 (Bankr. E.D. Pa.), *aff'd*, 214 B.R. 761 (E.D. Pa. 1997). After analyzing various definitions of the word "contribution," we are not convinced that voluntariness is at all times a necessary component of a "contribution." This limitation is not entirely consistent with the ordinary use of the word "contribution." An employer's statutorily mandated payment to an employee benefit fund, for example, is no less of a "contribution" to such a fund simply because it is mandated by statute, agency regulations, an employee contract, or a collective bargaining agreement. We, therefore, hold that it is not necessary for a court to determine whether an employer's actions were "voluntary" before granting priority to a claim under section 507(a)(4).