NIEMEYER, Circuit Judge,
dissenting:
The sole question in this appeal is whether the claim of Zurich American Insurance Company filed against the estate of Howard Delivery Service, Inc., the debt- or in bankruptcy, for unpaid workers’ compensation insurance premiums is given priority by § 507(a)(4) of the Bankruptcy Code. Because such premiums are plainly not — as the statute requires they must be — “contributions to an employee benefit plan arising from services rendered,” 11 U.S.C. § 507(a)(4), I would affirm the judgment of the district court denying priority for Zurich’s claim.
In holding that claims for unpaid workers’ compensation insurance premiums enjoy the same priority as claims for unpaid employee fringe benefits, the judgment of the majority widens a split among the circuits, joining the Ninth Circuit as the only circuit that has so held. See Employers Ins. of Wausau v. Plaid Pantries, Inc., 10 F.3d 605 (9th Cir.1993). The other three circuits that have considered this issue have held that claims for unpaid workers’ compensation insurance premiums do not fall within the statutory language of § 507(a)(4) and therefore do not enjoy the priority afforded by that section. See Travelers Prop. Cas. Corp. v. Birmingham-Nashville Express, Inc. (In re: Birmingham-Nashville Express, Inc.), 224 F.3d 511 (6th Cir.2000); State Ins. Fund v. Southern Star Foods, Inc. (In re: Southern Star Foods, Inc.), 144 F.3d 712 (10th Cir.1998); Employers Ins. of Wausau, Inc. v. HLM Corp. (In re: HLM Corp.), 62 F.3d 224 (8th Cir.1995). Because I believe that the decisions of these *242 three circuits better capture the plain meaning of § 507(a)(4), I would join them.
I
When construing a statutory provision, we begin with an analysis of the statute’s language. See, e.g., Landreth Timber Co. v. Landreth, 471 U.S. 681, 685, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985). If the language is unambiguous and “the statutory scheme is coherent and consistent,” we apply the statute as written. Robinson v. Shell Oil Co., 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (quoting United States v. Ron Pair Enterprises, 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)) (internal quotation marks omitted). “The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.” 519 U.S. at 341, 117 S.Ct. 843.
Moreover, in construing provisions of the Bankruptcy Code, we keep in mind its overriding objective of providing to creditors equal distribution of a debtor’s limited resources. See Isaac v. Temex Energy, Inc. (In re Amarex, Inc.), 853 F.2d 1526, 1530 (10th Cir.1988). Because of this broad equitable purpose, statutory priorities must be narrowly construed. See Travelers Prop. Cas. Corp., 224 F.3d at 517; New Neighborhoods, Inc. v. W. Va. Workers’ Comp. Fund, 886 F.2d 714, 719 (4th Cir.1989); Isaac, 853 F.2d at 1530. Stating this principle as a rule of statutory construction, the claims of a class of creditors may receive preferential or priority treatment from bankruptcy courts only when authorized by Congress in clear and unequivocal terms. See United States v. Embassy Restaurant, Inc., 359 U.S. 29, 31, 33, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959). It follows that if a particular type of unsecured claim is not clearly and unequivocally listed in 11 U.S.C. § 507(a), which enumerates the Bankruptcy Code’s priorities, then Congress had no intention of giving the claim priority, see Nathanson v. NLRB, 344 U.S. 25, 29, 73 S.Ct. 80, 97 L.Ed. 23 (1952); Employee Transfer Corp. v. Grigsby (In re White Motor Corp.), 831 F.2d 106, 110 (6th Cir.1987), and we would not be free to create a new priority, see Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917).
II
In this case, we consider whether 11 U.S.C. § 507(a)(4) clearly grants priority to claims for unpaid workers’ compensation insurance premiums. Before turning to the specific language of § 507(a)(4), it is useful to give context to the enactment of that section, see Robinson, 519 U.S. at 341, 117 S.Ct. 843, which in this case provides substantial assistance in understanding the statutory language employed by Congress.
Congress enacted § 507(a)(4) in 1978 specifically to overrule the holdings in two Supreme Court cases: United States v. Embassy Restaurant, Inc., 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959), and Joint Industry Board v. United States, 391 U.S. 224, 88 S.Ct. 1491, 20 L.Ed.2d 546 (1968). In Embassy Restaurant, the Court construed the predecessor to § 507(a), 11 U.S.C. § 104(a)(2) (repealed 1978), which established a priority in bankruptcy for claims of “wages ... due to workmen,” and held that a claim for contributions by an employer to a union welfare plan owed under the terms of a collective bargaining agreement did not constitute “wages ... due to workmen.” 359 U.S. at 30-31, 79 S.Ct. 554. Trustees of the welfare plan, which had been formed to maintain life insurance, weekly sick benefits, hospital benefits, and other advantages for union members, id. at 30, 79 S.Ct. 554, argued *243 that “since unions bargain for these contributions as though they were wages and industry likewise considers them as an integral part of the wage package, they must in law be considered wages,” id. at 33, 79 S.Ct. 554 (internal quotation marks omitted). Rejecting this argument, the Supreme Court held that fringe benefits payable through a plan “cannot be treated as being within the clear, unequivocal language of ‘wages ... due to workmen.’ ” Id.
Likewise, in Joint Industry Board, the Supreme Court, following its decision and rationale in Embassy Restaurant, held that a claim for an employer’s unpaid contributions to an employees’ annuity plan established by a collective bargaining agreement was not a claim for “wages ... due to workmen” under 11 U.S.C. § 104(a)(2) (repealed 1978). See 391 U.S. at 226-28, 88 S.Ct. 1491.
In response to these two decisions, Congress enacted § 507(a)(4) to give priority status to claims for such fringe benefits— the “contributions” to employee benefit plans referred to in Embassy Restaurant and Joint Industry Board. As Congress explained:
Paragraph (4) overrules United States v. Embassy Restaurant, which held that fringe benefits were not entitled to wage priority status. The bill recognizes the realities of labor contract negotiations, under which wage demands are often reduced if adequate fringe benefits are substituted. The priority granted is limited to claims for contributions to employee benefit plans such as pension plans, health or life insurance plans, and others, arising from services rendered.
H.R.Rep. No. 95-595, at 357 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6313 (internal citation omitted). That purpose is now captured in the text of § 507(a)(4), which reads:
(a) The following expenses and claims have priority in the following order:
(4) Fourth, allowed unsecured claims for contributions to an employee benefit plan arising from services rendered within 180 days [of the filing of a petition] ....
In this context, we now turn to the specific question of whether a claim for unpaid premiums for workers’ compensation insurance is clearly and unequivocally a claim for “contributions to an employee benefit plan arising from services rendered.”
Ill
In defining the priority granted in § 507(a)(4), Congress used the language the Supreme Court used to describe fringe benefits in Embassy Restaurant when it excluded them from “wages ... due to workmen.” See 359 U.S. at 29-30, 79 S.Ct. 554 (framing the issue as “whether contributions to an employer welfare fund which are required by a collective bargaining agreement are entitled to priority”). Although Congress could have used broader terms in defining the priority, it selected the terms (1) “contributions” to an (2) “employee benefit plan,” and related them to (3) “services rendered” by the employee. These three phrases taken together connote the very fringe benefits rejected in Embassy Restaurant and Joint Industry Board. Of course, this is not surprising, because 11 U.S.C. § 507(a)(4) was enacted specifically to overrule these two cases.
The question here is whether a claim for unpaid insurance premiums falls within the class of claims described by Congress as claims for unpaid “contributions to an employee benefit plan arising from services rendered.” Stated more succinctly, is workers’ compensation coverage a fringe *244 benefit? Several compelling reasons convince me that a claim for unpaid insurance premiums is quite distinct from unpaid “contributions to an employee benefit plan arising from services rendered” and thus is not accorded priority status under the statute.
First, workers’ compensation liability is an employer’s liability imposed by statute in lieu of tort liability. See Mandolidis v. Elkins Indus., Inc., 161 W.Va. 695, 246 S.E.2d 907, 911 (1978) (noting that West Virginia’s “Workmen’s Compensation Act was designed to remove negligently caused industrial accidents from the common law tort system”) (emphasis omitted); Belcher v. J.H. Fletcher & Co., 498 F.Supp. 629, 630-31 (S.D.W.Va.1980) (same). Thus, rather than constituting the payment of a “benefit” to employees, insurance premiums for workers’ compensation are the payments due from an employer in respect to its statutory liability and its employees’ statutory rights. Such payments are not thought to be “contributions,” a term that involves a notion of voluntariness. See Webster’s Third New International Dictionary 496 (Merriam Webster Inc. ed., 1993) (defining a “contribution” as “a sum or thing voluntarily contributed”). Thus, while payments to a plan for fringe benefits are considered “contributions,” payments made to discharge a statutorily mandated liability are not.
Second, the payment of premiums to an insurance company for the issuance of a workers’ compensation insurance policy is not a contribution “to an employee benefit plan” as that term is used in the statute. Although it would be correct to categorize some employer-funded insurance policies as “employee benefit plans,” that categorization is fitting only when the employer voluntarily provides the insurance policy as a fringe benefit to its employees or when the policy is negotiated between the employer and the employees as part of a collective bargaining agreement. A plan arrived at through those methods is quite different from a policy of insurance issued to discharge the statutorily mandated liability of an employer for workplace injuries.
Third, the payment of premiums by an employer to an insurance company for workers’ compensation insurance coverage is not a surrogate for the payment of wages to employees, as is embraced by the notion of a fringe benefit. See, e.g., Embassy Restaurant, 359 U.S. at 32-33, 79 S.Ct. 554. Section 507(a)(4) gives priority only to contributions that are considered fringe benefits in the sense that they arise from the employees’ “services rendered.” The claim for an unpaid insurance premium is not a claim for a contribution arising from “services rendered.” While premiums for workers’ compensation insurance might be computed by considering the number of employees covered on any given day, the premium is not linked to the “services rendered” by the employees as is required to qualify for priority status under § 507(a)(4).
In short, the plain language of § 507(a)(4), which gives priority to claims for unpaid “contributions to an employee benefit plan arising from services rendered,” does not cover claims for unpaid insurance premiums charged to cover the statutory liability of the employer to its employees. The unpaid insurance premium is not an unpaid contribution; it is not an unpaid contribution to an employee benefit plan; and it does not arise out of an employee’s services rendered in that it is not a wage surrogate.
To read § 507(a)(4) as expansively as do the opinions of Judge King and Judge Shedd not only disregards the explicit language of the statute, but such a reading also violates the underlying ground rules *245 for construing priorities under the Bankruptcy Code. “The broad purpose of the Bankruptcy Act is to bring about an equitable distribution of the bankrupt’s estate,” and “if one claimant is to be preferred over others, the purpose should be clear from the statute.” Embassy Restaurant, 359 U.S. at 31, 79 S.Ct. 554 (internal quotation marks and citation omitted); see id. at 33, 79 S.Ct. 554 (requiring a priority to be “within the clear, unequivocal language” of the statute). I submit it is not clear that § 507(a)(4) intends to give priority to claims for unpaid insurance premiums and therefore we are not free to create such a priority.
To make the construction advanced by his concurring opinion appear reasonable, Judge King has cobbled together selected dictionary definitions and portions of definitions. He has taken the statutory words out of context to stretch them beyond their plain meaning. This approach suffers, I respectfully submit, from the same flaw as does the indiscriminate use of statistics. But even when taking this approach — an approach that also violates the mandate to construe bankruptcy priorities narrowly— it is facially irrational to assert that payments for mandatory workers’ compensation liability fall within the plain meaning of the term “contributions to an employee benefit plan arising from services rendered.”
Judge Shedd’s opinion, concurring in the judgment, aptly notes that Judge King’s opinion “picks and chooses from accepted dictionary definitions” to arrive at “one reasonable interpretation,” but not “the only reasonable interpretation.” But Judge Shedd’s opinion then proceeds to construe “employee benefit plan” in § 507(a)(4) broadly, employing the definition given for that phrase in ERISA, 29 U.S.C. § 1002(3). Applying that definition out of context, Judge Shedd concludes that insurance for workers’ compensation benefits is an “employee benefit plan” that enjoys priority under the Bankruptcy Code.
Judge Shedd’s opinion well notes that ERISA explicitly exempts from its coverage any plan “maintained solely for the purpose of complying with applicable workmen’s compensation laws.” What Judge Shedd’s opinion fails to address, however, is the analogous limitation made in the Bankruptcy Code. While § 507(a)(4) gives priority to claims made against the estate for “contributions to an employee benefit plan,” that priority is not afforded with respect to every “employee benefit plan.” The priority is extended only with respect to contributions to employee benefit plans “arising from services rendered.” The phrase “arising from services rendered” indicates that not all employee benefit plans are given priority, but only those that function as wage surrogates. This is an especially important phrase in con-text because Congress enacted the priority to overrule the Supreme Court’s earlier decisions in Embassy Restaurant and Joint Industry Board.
For the reasons given, I would join the three circuits that have construed § 507(a)(4) not to give priority to claims for unpaid workers’ compensation insurance premiums, see Travelers Prop. & Gas. Corp., 224 F.3d at 517; State Ins. Fund, 144 F.3d at 717; Employers Ins. of Wausau, 62 F.3d at 226-27, expressing regret that we are now widening the split among the circuits.